DANIEL A. GILL *v.* BARNA A. COOK AND PRESCOTT HEALD.

[IN CHANCERY.]

*Interpleader.    Parties.    Husband and Wife.    Femme Covert's
Separate Property.    Promissory Note.*

C bought a note of H after the decease of H's wife which originally was her separate property, and which H had no right to sell unless she had given it to him prior to her death, which her administrator denied and claimed that H purloined it after her death and that it belonged to her estate. *Held*, that in a bill of interpleader brought by the maker of the note to determines whether he should pay to C or to the administrator, who were made defendants, H was not a necessary party. The question of liability between H and C, in case H had no title at the time he sold the note, cannot be determined in this proceeding.

Where a *femme covert*, living in Vermont, owns a farm in Wisconsin which she controls, and collects the rents accruing therefrom and holds the same as her separate property, they become her property in this state, which, upon her decease, would go to her heirs, although it does not appear what the laws of Wisconsin are in respect to the rents of a wife's separate estate.

· The court found as a fact in this case that H never had the possession of the note until after his wife's death, and that C did not purchase it in good faith, but that abundant circumstances existed to put him on his guard and, inquiry as to H's title; and the court *held* that the fact that the note was past due when C purchased it is not very material to this issue, as the maker concedes that the note is due and is ready to pay it to the proper party.

BILL OF INTERPLEADER, setting forth that in March, 1864, at Chester, the orator borrowed $300 of Mrs. Juliette P. Howe, wife

of Foster Y. Howe, of Chester, and gave her therefor his promissory note as follows :

"Chester, Vt., February 18, 1864.

"For value received I promise to pay Juliette P. Howe, or bearer, three hundred dollars on demand, at five per cent. interest annually.                    DANIEL A. GILL."

That the orator understood from said Juliette that said $300 was her sole and separate property ; that Juliette died November 4, 1864, at Chester, and Prescott Heald was appointed administrator upon her estate and accepted the trust ; that after the decease of Juliette, November 24, 1864, Barna A. Cook, of Chester, presented said note to the orator and claimed that he had purchased it of Foster Y. Howe, since the decease of Juliette, and that he was the *bona fide* owner thereof, and demanded payment of the orator, but that he declined to pay on the ground that he was not sure that said Cook was the lawful holder thereof ; that shortly after said Cook demanded payment as aforesaid, said Heald, as administrator, as aforesaid, notified the orator that said note belonged to the estate of Juliette, and that said Foster had no right to sell and transfer it to said Cook, forbade the orator paying it to him, and demanded payment to himself as administrator of said estate ; that the orator is ready to pay the note to such person as the court may direct ; and prayer that the defendants severally set forth their title and claim to the money due on said note, and interplead and adjust their respective rights between themselves, etc., and for proper injunction upon them.

Defendant Cook, June 3, 1865, demurred on the ground that said Foster Y. Howe should have been made a party to the bill.

Defendant Heald, July 10, 1864, answered, claiming said note as a part of Juliette's estate, and that the facts in relation to the note were as follows : "that said Foster abandoned his said wife, Juliette, some five or six years next prior to her decease, and did not return to see her until a few months prior to her death ; that she owned a farm in her own right in Wisconsin, which was devised to her by her father, and from which she received annual rents ; that the money which the orator received from her, and for which the note was given, was her sole and separate estate,

derived from said rents or otherwise, and that the note remained in her possession until her decease, when it was purloined from her effects by said Foster, and by him transferred to said Cook, and that Cook was in possession of such facts as should have put him on inquiry before he took the transfer of the note from said Foster." Said demurrer being overruled and the defendant Cook ordered to answer, he filed his answer March 21, 1867, averring upon belief, that Juliette gave and delivered said note to her husband, said Foster, and he took the same with her knowledge and consent, with the avowed purpose of reducing it to his legal possession as her husband ; that Juliette died without issue ; that after her decease said Foster produced said note and desired him to purchase the same, which he did in good faith and for valuable consideration, and without suspicion that it came to Foster by fraud, but believing and having reason to believe that Foster was the legal owner and bearer, and had the right to negotiate the same to any person.

At the December term, 1867, BARRETT, Chancellor, decreed that the bill was properly filed, and that the defendants proceed and litigate the matters between themselves.

At the December term, 1868, BARRETT, Chancellor, made a decretal order as follows :

" Heard upon the interpleading of the defendants and their respective proofs. Whereupon it is considered and adjudged that the said Gill pay the said note and the money due thereon to the said Heald, as administrator, as aforesaid, and that the said Cook be, and he is hereby, perpetually enjoined from collecting or enforcing said note, or receiving the money or any part of it due on said note ; and that he deliver the same to the said Heald, as administrator, as aforesaid, and that he pay the costs taxable in favor of said Gill and said Heald."

Appeal by defendant Cook.

The testimony tended to sustain the averments in the pleadings, and the facts found upon the evidence are set forth in the opinion of the court.

*H. E. Stoughton,* and *Julius Converse,* for the defendant Cook,

*Luther Adams*, for the defendant Heald.

*Henry Closson*, for the orator.

The opinion of the court was delivered by

PIERPOINT, C. J.    This is a bill of interpleader.    The defendant, Cook, first demurrs to the bill because Foster Y. Howe, of whom he purchased the note, about which the controversy between himself and the defendant Heald  exists, ought to have been made a party defendant.    Whether the said  Howe will  be liable over to  said Cook in  case it turns  out that  Howe had  no title  to the note  in question at the time he sold it to  Cook, is not  a question that can be determined in this proceeding, and it is not a question that is at all material to the issue here presented, or that has any bearing  upon it.    That must be settled between Cook and Howe alone.    It is not necessary that Howe should be  made a party to give Cook the benefit of his testimony upon this trial ; he is a witness under  our statute for all  purposes, whether interested  in the result,  or in the question.    The only  matter to be  determined here is, which  of the  two  defendants is entitled  to the pay upon the note from the orator ; in other words which of the two defendants,  Cook  or  Heald, is the  legal owner  of the note, and  for the purpose of determining that question, Howe is not  a necessary party, and the demurrer was properly overruled.

Upon the merits of the bill we are satisfied from the testimony that  the money that  the orator  received  from  Juliette P. Howe, the wife of the said Foster Y., and for which the note  was given, payable to her, was the separate property of the said  Juliette, received  as the rent of a farm she owned in Wisconsin.    This farm was  willed to her by her father, and she had received the rent thereof for many years, without  interference, or  claim, on the part of her husband.    Whether the law of  Wisconsin is the  same as in this state in respect to the right of the wife to the income of her separate estate does  not appear, but from the facts developed in this case, we feel at liberty to infer that by the law of that state the wife is entitled  to the rent of  her real estate ; at all events so long as she controls it, collects the rent, and holds the rent as her

own separate property, as in this case, it must be regarded as her own property in this state, which her husband has not reduced to possession, and which upon her death will go to her heirs.

The question then arises, did the said Juliette in her lifetime give and transfer this note to her husband, and he so take possession of it as that it can be said that he had so reduced it to possession that he became the legal owner of it, and thus prevent its going to her heirs upon her death. In determining this question, we have no occasion to enquire as to what acts are necessary to be done on the part of the husband to constitute a reducing of property of this kind to possession, so as to vest the title in him, whether the taking possession of the note for the purpose of collecting it and converting the avails to his own use, is sufficient, or whether he must go further and collect the money on the note, or change its character by taking a new one, or what acts would be sufficient: because we are fully satisfied from the proof that Foster Y. never had the possession of this note until after the death of his wife. The relation that had existed between them for so many years during which she had been compelled, mainly, to rely upon her own resources for her support, with the fact that she had kept her own property under her own control, would almost preclude the idea of her then putting it into his hands. The facts that she said nothing of having done so, although, as appears by the testimony of her nurse, introduced by the defendant Cook, she spoke of her property during her last illness on more than one occasion; that she did not speak of having given it to him, or of an intention to give it to him, but spoke of it as that which he would have after her death, evidently supposing it would then belong to him: these things, together with the conduct of Foster Y. after her death, all tend strongly to show that he did not even have the possession of her property until after her death. This note constituted all of her personal property, except her wearing apparel and personal ornaments.

The question then arises, what title did the defendant Cook get by the purchase of the note of Foster Y., and here again we are relieved from the necessity of enquiring as to the rules that would be applicable to the case, if Cook had purchased this note in good

faith, without the existence of any surrounding circumstances, cal-culated to excite suspicion as to the ownership of Howe. For from the evidence, we think the circumstances under which he ob-tained the note were abundantly sufficient to put him upon his guard and upon inquiry as to Howe's right to the note. Cook was familiar with the history of these parties, resided in the neigh-borhood; he knew that the wife had resided with her mother for years, and that Howe had not been there during the whole period until within a few weeks of his wife's death, and when he presented himself in the streets of Chester, within three or four days after her death, with this note for sale. The note upon its face told him that, when it was given, it was the property of the wife, as it was made payable to her. The date of the note informed him that it was given at a time when Howe had not been there for years, and that it must necessarily have been given for and as the prop-erty of the wife. This of itself was sufficient to put a man of or-dinary prudence upon inquiry as to how he came by the note, whether before the death of the wife, and with her consent, or after her death. But this is not all: Cook knew the maker of the note, who resided within a few miles; he knew him to be perfectly good, and able to pay the note at any time when presented, and he knew that Howe knew him to be good. This being so, the fact that Howe was willing to make a deduction of about forty dollars from the amount due on the note would have been sufficient we think to excite the suspicion, in any sane mind, that there was something wrong about the transaction, and of itself enough to put him upon inquiry. Then again the discrepancy between what he swears to in his answer and in his testimony, in respect to what he paid for the note, excites a suspicion in our minds that his own part in the transaction was not entirely in good faith.

In the argument, considerable importance was attached to the fact that the note was past due at the time Cook purchased it. We do not think this fact is very material to the present issue. As between the maker and the holder of a note, such fact might become very material in determining what defenses the maker would have the right to set up against such holder, but here there is no controversy on the part of the maker; he concedes the note

to be due, and is ready to pay it; he is only seeking to find out who the owner is, and in deciding that question, the fact that the note is past due is of comparatively little weight of itself. Past due notes we apprehend are too common to have that fact alone excite a very serious suspicion as to the title of the holder. On the whole we are satisfied that the decree of the chancellor was right.

Decree affirmed and the case remanded.