## JAMES GILL

### *v.*

## CLINTON WOODS, Admr., etc.

1. HUSBAND AND WIFE—*gift of husband to wife good in equity.* A gift from a husband to his wife, without the intervention of a trustee, by the common law, was void, at law, but in equity, where the evidence is clear and satisfactory, will be supported as the separate property of the wife, when not prejudicial to creditors of the husband.

2. Where a husband and wife were married before the Married Woman's Act of 1861, and the husband showed, by clear and explicit acts, an intention to give his wife the rents and profits of her land, by having her rents kept separate from his own, and, when sold, paying the proceeds to her, and, when loaning her moneys, by taking notes payable to her, it was *held*, that, even admitting the rents and profits of the wife's land belonged to the husband, the acts showed not only an intention to give them to his wife, but

was an executed gift, which a court of equity would uphold and enforce as against him after her death, in 1871.

3. In such a case, the husband, in equity, will be required to surrender to her executor or administrator the notes in his possession payable to her, he being held as having them merely as her agent, and to account for payments received by him on such notes, and for money received on the sale of her rents.

APPEAL from the Circuit Court of Clark county; the Hon. O. L. DAVIS, Judge, presiding.

Mr. JAMES C. ALLEN, Messrs. DULANEY & GOLDEN, and Mr. N. L. SCRANTON, for the appellant.

Mr. H. B. DECIUS, and Mr. J. W. WILKIN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit in chancery, by Clinton Woods, as administrator, with the will annexed, etc., of the estate of Rosanah G. Gill, deceased, against James Gill, the former husband of the said Rosanah, to compel him to pay and deliver over to said administrator certain moneys, notes and property claimed to belong to the estate of said Rosanah. The court below decreed the defendant to pay to the administrator the sum of $821.25, and to deliver up certain promissory notes to the amount of $308. The defendant prosecutes this appeal.

There does not seem to be any question made that the decree, as to the amount, is not warranted by the evidence—if the appellee is entitled to recover at all—further than that appellant claims there should have been an allowance to him for services. Nor is there really any controversy as to the facts, but the question presented is upon their legal effect—whether, under them, the moneys and notes in the hands of appellant belonged to Rosanah Gill in her lifetime, as her separate property.

The evidence shows that James Gill, in 1853, was married to Rosanah G. Sconce, then the widow of one Thomas Sconce, deceased. At the time of the marriage, she owned in fee 80 acres of land, and had a life estate in 40 acres of land, as

dower, and sundry articles of household furniture.   The rents
and profits of these lands form the subject matter of the
moneys and notes involved in this suit, they being on account of
and representing the accumulations of such rents and profits,
and the interest thereon.   During the marriage, the parties
kept their moneys and property entirely separate, the same
being treated as distinct, as though no marriage relation ex-
isted.

Appellant took the charge and management of his wife's
lands, but ever recognized and treated the rents and profits of
them as belonging to her.   His declarations to that effect were
frequent.   When he sold the rents, which were received in
produce, he paid the money over to her.   The moneys arising
from the rents she kept and loaned, from time to time. her
husband drawing the notes, and always making them payable
to her.   The tenant occupying and cultivating the land, at the
same time occupied and cultivated 40 acres adjoining, which
belonged to appellant himself.   The tenant testifies that he
rented from appellant his and his wife's land at the same
time; that their rents were kept separate. and that there were
separate cribs, in which their respective rents were put; that
she claimed her own rents off her place.

The evidence is full and explicit that appellant declined to
avail himself of his marital right to claim the rents and profits
of his wife's land, but consented that she should have them as
her separate estate.   The authorities abundantly show that,
under such circumstances, these rents and profits of the wife's
lands, during coverture, became her separate estate, in equity,
and will be supported as such against the husband, in equity.

Chancellor Kent, speaking as to the effect in equity, lays it
down:   Gifts from the husband to the wife may be supported
as her separate property, if they be not prejudicial to credit-
ors, even without the intervention of trustees.   2 Kent Com.
163.   To like effect see 1 Bright's Husband and Wife, 33, sec.
21; Schouler's Domestic Relations, 284; 2 Story Eq. Jur. sec.
1387.

In _Wallingsford_ v. _Allen_, 10 Peters, 583, the court say:

"Agreements between husband and wife, during coverture, for the transfer of property directly to the latter, are undoubtedly void at law. Equity examines with great caution before it will confirm them. But it does sustain them when a clear and satisfactory case is made out that the property is to be applied to the separate use of the wife." And the case so holds, although no trustee has been interposed to hold to the wife's use.

In *Savage* v. *O'Neil*, 44 N. Y., where was involved the question of the effect of a loan by the wife to the husband. of money which she had previously received from her mother, Earl, Commissioner, delivering the opinion, says: But if the plaintiff received the money as a gift from her mother, before 1848, (the time of the passage of the statute securing the ownership of property to married women as their separate estate,) the husband chose not to avail himself of his marital right to claim it. He consented that his wife might have it as her separate estate, and it thus became her separate estate in equity, and when she loaned him the money, she became, in equity, his creditor, and he was equitably bound to pay her according to his agreement, and its payment could, in equity, be enforced against him.

In the language of the opinion of the court in *Adams and others* v. *Brackett*, 5 Metc. 285, " In England it has been determined that, in equity, a gift from the husband to the wife is valid. *Slanning* v. *Style*, 3 P. W. 338; *Lucas* v. *Lucas*, 1 Atk. 270. In the case of *McLean* v. *Longlands*, 5 Ves. 79, Lord ALVANLEY says 'nothing less would do than a clear, irrevocable gift, either to some person as a trustee, *or by some clear and distinct act of his*, by which he divested himself of his property, and engaged to hold it as a trustee for the separate use of his wife.' And in *Walter* v. *Hodge*, 2 Swanst. 106, Sir THOMAS PLUMER, in referring to the case of *Lucas* v. *Lucas, supra*, says, 'in the single case of £1000 South Sea annuities, transferred by the husband into the name of his wife, *in his lifetime*, the court thought that so decisive an act, as amounted to an agreement by the husband that the property

should become her's.    That seems to come under the description stated by Lord ALVANLEY; *it is an act, a clear and distinct act, by which the husband divested himself of his property.*' "

In that case, in 5 Metc., the husband had subscribed and paid for certain shares in the stock of a bank, saying they were his wife's, and a certificate was issued to her, as owner of the shares; and it was held that she was entitled, as against his heirs at law, to hold the shares as her property, as there having been a gift thereof to her by her husband.

In *Phelps* v. *Phelps*, 20 Pick. 556, a married woman lent the interest accruing after her marriage, upon a note held by her before her marriage, and the borrower gave her therefor a promissory note, which was made payable to her, in accordance with the wishes of her husband, in order that she might be the exclusive owner thereof; held, that she was entitled to retain the amount of the note paid to her after the death of her husband, as against the executor of the husband.

In *Fish et al.* v. *Cushman et ux.* 6 Cush. 20, the court say: " So also she (the wife) may be such payee of a note, obligee of a bond, or a depositor to whose credit money is deposited in a savings bank, when the consideration for such note, bond or deposit certificate may have proceeded wholly from the husband; and in such case, as regards the heirs at law of her husband, she may hold the same to her sole use, if she survives her husband."

In the case of *Crawford's Appeal*, 61 Penn. St. 52, the husband had money belonging to his wife, in his possession.    The money was credited on his books as cash received, carried into the account of moneys admitted to belong to her, and interest credited upon it.    Held, that this was an executed gift, the husband becoming trustee of the funds, and that the wife was entitled to payment from his estate.    See, also, *Gill* v. *Cook*, 42 Verm. 140; *Schewman* v. *Marley*, 29 Ind. 459.

The wife, here, died in 1871, having made a will, and the contest is really between her devisees and the husband.    Admitting the rents and profits of her lands, during the coverture,

were the sole property of the husband, there was here a gift of them to the wife. There was not merely the intention clearly expresed that the wife should have them, but the intention was executed—the gift was complete. The separation of the rents from the mass of appellant's property, by having the tenant of the adjoining lands of appellant and his wife keep her rents separate for her use, in a separate repository—the paying over to her, as her's, the money which he received from the sale of the rents from her land—and his drawing the notes for the loans made by her, from time to time, of the moneys so derived, making the notes payable to her, were clear and distinct acts, by which he divested himself of the property, and appropriated it to the separate use of his wife. It matters not, as we conceive, that the notes he is decreed to deliver up are found in his possession. Such possession, like all his other acts and doings in the premises, must be held to be as agent for his wife.

The authorities cited as to the effect of such a gift, by the common law, do not apply. It is conceded that the gift is void at law. But, in equity, it will be upheld when the gift is complete.

The notes decreed to be surrendered up were notes payable to the wife, so drawn by the husband himself, and were given for loans of money derived from the rents of the wife's land, and which had previously been paid over to her for her separate use. The money which appellant was decreed to pay had all, with the exception of $75.75, been received by him after the death of his wife, on notes similarly payable and drawn, and given for the like consideration. As respects such notes, we can not doubt that the gift should be regarded as complete; that the intention to make them, and the money they represented, the separate property of the wife, had been executed by the positive acts of appellant, by which he had divested himself of the property in her favor.

The amount of $75.75 of the sum decreed to be paid by appellant, was for grain rent on hand at the time of the wife's death, which appellant afterward appropriated to his use. In

Syllabus.

respect to this, the evidence is not so strong that the intention to make it the separate property of the wife had been executed, as in respect to the notes, and money paid to her. But we are disposed to regard the setting apart of the grain for the separate use of the wife, and having it kept in a separate place for her use, such a separation of it from the mass of appellant's property as to sufficiently execute his clearly expressed intention that it should be the separate property of his wife. There are, here, no rights of creditors concerned, and there is no pretense of any cover for fraud, and we see no reason why the intention and acts of the husband should not have effect.

Appellant claims that, if he is to be held liable in respect to this property, he should be allowed compensation for his services in the care and management of the same; and witnesses testify to the value of the services as fifty dollars a year.

The evidence shows no indication of any intention of appellant, during the whole time of the coverture, of some eighteen years, to charge his wife any thing for his services. We think, from the evidence, that no such intention existed; that the services were performed gratuitously, and that there is no equitable claim for any allowance in respect thereof.

The decree will be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCHOLFIELD, having been of counsel in this case in the court below, took no part in the decision.