| 80 | 371 |
| 125 | 311 |
| 125 | 312 |
| 80 | 371 |
| 131 | 188 |
| 80 | 371 |
| 40a | 230 |
| 80 | 371 |
| 58a | 295 |
| 80 | 371 |
| 64a | 138 |
| 80 | 371 |
| 67a | 226 |
| 80 | 371 |
| 72a | 533 |
| 80 | 371 |
| 78a | 504 |
| 80 | 371 |
| 178 | 425 |
| 80 | 371 |
| 99a | 604 |

# Anson Sperry, Guardian, etc.

## v.

# Patrick Fanning *et al.*

1. Contract—*party not responsible for delay caused by other party.* If a party contracting to furnish and deliver cut stone for a building is ready and willing to deliver as required, but the other party is not then ready to receive the same, and after the delivery is commenced he is delayed in consequence of mistakes in the drawings and specifications furnished, by which he has to do a portion of the work a second time, he can not be held liable in damages for delay in completing the building, without his fault.

2. Same—*damages for delay.* If a party agreeing to furnish the cut stone for a building is guilty of a delay in supplying the same within the time required, whereby the builder claims that he was deprived of rents in the spring, the usual time for leasing rooms, he must show that the building would have been completed by the time for renting had it not been for the delay in delivering the stone, if he wishes to recoup damages in a suit for the price of the stone.

3. Same—*when personally binding on party making.* If a person makes a contract, describing himself as guardian or trustee for another, and so signs the same, he will be personally liable, in the absence of an express provision showing clearly that both parties agreed to act upon the responsibility of the funds in his hands alone, or upon some other responsibility, or there appears some other circumstance clearly indicating another party who is bound by the contract, and upon whose credit alone it is made.

4. The use of the name trustee, or other name of office or employment, by a promisor or contracting party, will not discharge him. Some one must be bound by the contract, and if he does not bind some other he binds himself, and the official name is then only regarded as describing and designating him.

5. Guardian—*when personally liable on contract.* A guardian can not, by his own contract, bind the person or estate of his ward; but if he promises, on a sufficient consideration, to pay the debt of his ward, he is personally bound by it, although he expressly promises as guardian. And a guardian who thus discharges the debt of his ward, may lawfully indemnify himself out of the ward's estate, or, if he be discharged from his guardianship, he may have an action against the ward for money paid for his use.

6. Where a guardian contracted, as such, for stone for a building for his ward, and signed the same as guardian, and the contract did not assume to bind the ward, and did not limit the guardian's liability by a provision that the price should be paid from the assets belonging to the ward in the guardian's hands: *Held,* that the guardian was personally liable on the contract.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSIAH MCROBERTS, Judge, presiding.

Messrs. ISHAM & LINCOLN, and Messrs. WILLIAMS & THOMPSON, for the plaintiff in error.

Messrs. COOPER, GARNETT & PACKARD, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Patrick Fanning and Edward Johnson, in the Superior Court of Cook county, against Anson Sperry, guardian of the estate of Henry W. Kingsbury, upon a contract to recover a balance claimed to be due for cut stone furnished in the erection of a certain building in Chicago.

A jury, by agreement, was waived, and a trial before the court resulted in a judgment in favor of the plaintiffs for $4574.56, to reverse which this writ of error was brought.

Two grounds are relied upon by the defendant to secure a reversal of the judgment: First, that the damages sustained by the failure of the defendant to furnish the cut stone within the time required by the contract, resulting in a postponement of a completion of the buildings, were equal to the balance due upon the contract, and should have been set off by the court; second, that a personal judgment could, in no event, be rendered against the defendant on the contract.

The contract was executed on the 22d day of July, 1872, and by its terms the cut stone was to be delivered on the building premises as rapidly as called for by the contracting mason, so as to enable him to complete the walls of the building, ready for the roof, on or before the 15th day of October, 1872. The two buildings were to be erected five stories high. The stone to be furnished was of a costly character, and a large amount was required. The contract price for the entire amount of stone to be furnished under the contract, amounted to the sum of $19,574.

There was a delay in the construction of the iron work for the buildings, for which the plaintiffs were in no manner respon-

sible, which caused a delay in the progress of the mason work, so that the stone was not required until after the 15th day of October. In addition to this, there is proof in the record that prior to the 15th of October the premises were occupied with other building material, and there was no place where the stone could be delivered on the premises; that a portion of the stone had been sent to the premises by the plaintiffs, and returned for the reason the masons were not ready for it.

It is apparent, from the evidence, that prior to the 15th of October, the plaintiffs had portions of the stone ready, and were ready and willing to deliver it, but the masons were not ready for it and did not desire it. After this time, the masons testify they were delayed in the prosecution of the work, on account of the failure of the plaintiffs to furnish the cut stone as fast as it was required. On the other hand, this is denied by the plaintiffs, and their evidence is corroborated by teamsters in their employ, who assisted in hauling the stone.

It also appears, on one of the buildings the masons were delayed on account of a mistake made by the architects, in regard to the iron work, which compelled a change in a portion of the stone work. In other instances, changes were made by the architects in the drawings furnished to the plaintiffs, by which portions of the work had to be done over a second time, necessarily causing some delay for which they could not be held responsible.

Neither does it appear that the building would have been completed and ready for rent by the 1st of May, 1873, the usual time for renting, if the masons had proceeded with their work without any delay, regardless of who may have been in fault and caused the delay. It nowhere appears within what time the carpenters, painters, plasterers, and other contractors, would have completed their contracts, or within what time they were required to do so. If, therefore, there was a delay by the plaintiffs in the delivery of stone within the time required by the contract, it does not appear that such delay caused the damage claimed by the defendant—the loss of rents in the spring of 1873.

But, independent of these considerations, the question whether the plaintiffs failed to deliver the stone in the manner required by the contract, and whether the defendant was damaged thereby, were purely questions of fact for the court. The evidence bearing upon that branch of the case was voluminous and conflicting, and unless the finding of the court is manifestly wrong, which does not appear from this record, it is not the province of an appellate court to interfere.

The other question, whether the defendant was personally liable for a balance due the plaintiffs for stone delivered and used in the erection of the buildings, involves a construction of the contract executed by the parties upon which the action is brought.

At the time the contract was executed, the defendant was the guardian of Henry W. Kingsbury, a minor, who owned the premises upon which the buildings were erected. The agreement was made between P. Fanning & Co., plaintiffs, of the first part, and Anson Sperry, the defendant, as guardian of the estate of Henry W. Kingsbury, party of the second part, and was executed by the defendant: "Anson Sperry, guardian of the estate of Henry W. Kingsbury."

After the buildings were erected, and before the action was brought, the defendant resigned his position as guardian, and another was appointed by the county court of Cook county in his stead, to whom the defendant turned over all assets in his hands belonging to his ward.

It will be observed that the contract was not made in the name of the ward, by a guardian or agent, nor is it claimed that the ward could execute a legal contract in his own name in person, or by an agent or guardian. To what extent the guardian, under the sanction of the county court, could bind the estate of the ward, as between the guardian and ward, it is not necessary to consider.

It will also be observed that there is a clear and marked distinction, in all the authorities, between the agreement of an agent who describes himself as contracting for a principal, and the covenant of a principal who contracts by and through an

agent. The former may be regarded as the personal contract of the agent, while the latter may be held to be the undertaking of the principal.

Parsons, in his work on Contracts, vol. 1, page 121, in speaking of the contract of a private trustee, says: "He is bound personally by the contracts he makes as trustee, although describing himself as such, and nothing will discharge him but an express provision, showing clearly that both parties agreed to act upon the responsibility of the funds alone, or of some other responsibility exclusive of that of the trustee, or some other circumstance clearly indicating another party who is bound by the contract, and upon whose credit alone it is made. The mere use by the promisor of the name of trustee, or of any other name of office or employment, will not discharge him. Some one must be bound by the contract, and if he does not bind some other he binds himself, and the official name is then only regarded as describing and designating him."

The same author, in a chapter on Guardians, page 136, says: "A guardian can not, by his own contract, bind the person or estate of his ward; but if he promise, on a sufficient consideration, to pay the debt of his ward, he is personally bound by his promise, although he expressly promises as guardian. And it is a sufficient consideration, if such promise discharge the debt of the ward; and a guardian who thus discharges the debt of his ward, may lawfully indemnify himself out of the ward's estate; or, if he be discharged from his guardianship, he may have an action against the ward for money paid for his use."

Robinson, in his work on Practice, Vol. 3, page 264, in discussing this question, says: "If a trustee choose to bind himself by a personal covenant, he is liable at law for a breach thereof, in the same manner as any other person, though he describe himself as covenanting as trustee; for, in such case, the covenant binds himself personally, and the addition of the words, 'as trustee,' is but a matter of description, to show the character in which he acts, for his own protection, and in no degree affects the rights or remedies of the other party."

In *Foster* v. *Fuller*, 6 Mass. 58, it was held, that Fuller was personally liable on a note that read as follows:

"CAMBRIDGE, *Nov.* 2, 1808.

For value received, I, Timothy Fuller, as guardian of Edward Scott, of Cambridge, in the county of Middlesex, promise Joseph Foster to pay him two hundred and three dollars and seventy-two cents, in six months, and interest.

TIMOTHY FULLER, *Guardian.*"

See, also, *Stobie* v. *Dills*, 62 Ill. 432; *Thacher* v. *Dinsmore*, 5 Mass. 301; *Baker* v. *Mechanics' Ins. Co.*, 3 Wend. 94; *Stone* v. *Wood*, 7 Cowen, 453; *Tippets* v. *Edward Walker et al.* 4 Mass. 595; *Toft* v. *Brewster*, 9 Johns. 334; *Savage* v. *Rix*, 9 N. H. 263.

Numerous authorities might be cited which sanction and establish the same doctrine enunciated in those we have referred to, but it is unnecessary. The contract involved in this action can not, without a departure from the well settled rules of law, be regarded otherwise than as the personal contract of the defendant.

The addition of the words, "Guardian of the estate of Henry W. Kingsbury," after the defendant's signature to the contract, in no manner curtailed or lessened his liability to the plaintiffs, but such is mere matter of description, to show the character in which he acted as between himself and his ward.

The contract executed by the defendant does not assume to bind the ward, nor does it limit the liability of the defendant by a provision that the plaintiffs should be paid from the assets belonging to the ward, in the hands of defendant, as guardian; in fact, the contract contains nothing pointing to the liability of any person save only the defendant himself.

There was, therefore, no error in the rendition of a personal judgment against the defendant, and it will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT:

I can not concur in this decision. The contract was made by defendant on behalf of his ward, and it was not in the con-

templation of either party that he was to be personally respon-
sible upon it.   Under our law, the guardian has the "care and
management" of the estate of his ward.   It was under the
authority supposed to be given by the statute that defendant
undertook to have the improvements made on his ward's prop-
erty.   He had no private interest in the matter whatever.
Both parties must have so understood it, for they went before
the county court to have the contract approved, which was
done.   Had it been the intention of defendant to bind himself
personally, it was folly to go before the county court to pro-
cure its approval of the contract.   The law is, as I understand
it, the intention of the parties must determine the character
of the undertaking, whether any personal liability is assumed.
Every fact and circumstance in this case rebuts the idea de-
fendant assumed any personal responsibility, but, on the con-
trary, show that he contracted alone on behalf of his ward.

But there is another principle that I think ought to control
this decision, viz: that where the agent or trustee acts under
authority derived from public laws, and the source of that
authority is as well known to the other contracting party as to
himself, there can arise no individual liability, unless the in-
tent to incur personal responsibility is clearly expressed.
That is this exact case.   Defendant only assumed to act on
behalf of his ward, and no farther than both parties under-
stood the statute had conferred authority upon him.   Of this
there can be no shadow of doubt.   It appears, on the face of
the contract itself, he contracted "as guardian," and it is so
averred in the declaration.   When both parties are mistaken
as to the authority given by law under which this party
assumed to act, the more reasonable doctrine is, such contracts
are not binding on either party.   Declaring such contracts
personally obligatory by construction, is to adopt an uncon-
scionable rule that would ensnare honest men who endeavor to
perform such duties with the utmost regard to the best inter-
ests of their wards.

In the case at bar, the contract was made with the approval
of the county court, under the belief it was for the best inter-

est of the ward's estate, and to make the guardian personally liable for the performance is to impose upon him an oppressive burden he never supposed he was assuming, and had he known such a construction would be given to the contract, he never would have taken upon himself its responsibilities.

Illustrative to some extent of my view of the law is the case of *Mann et al.* v. *Richardson*, 66 Ill. 481.

The judgment of the court below ought, in my opinion, to be reversed.

Mr. Justice Breese: I am of opinion the contract, on its face, shows it was not the intention of either of the parties to it, that Sperry should be personally bound, and the intention should control.