HENRY W. KINGSBURY

*v.*

HEMAN G. POWERS.

*Filed at Ottawa October 31, 1889.*

1. GUARDIAN AND WARD—*protecting the ward's estate—paying debts—incurring costs and expenses, etc.—reimbursing the guardian.* If a guardian promises, on a sufficient consideration, to pay a debt of his ward, he will become personally liable on his promise, though made expressly as guardian, and it is a sufficient consideration if such promise discharge the debt of the ward; and a guardian who thus discharges the debt of his ward may lawfully indemnify himself out of the ward's estate, or, if he be discharged from his guardianship, he may have an action against the ward for money paid to his use.

2. A guardian, under authority from the county court to contract for the building of business houses on his ward's ground, made a contract with one for the furnishing of cut stone, to the amount of $19,504. Before the completion of the buildings the guardian resigned, and the ward's mother was appointed as his successor, who refused to pay a balance of nearly $6000 claimed by the contractor for the stone and some extra work, on the ground of damages caused by delay in completing the contract. The latter sued the prior guardian on his contract, and the second guardian employed attorneys to defend the suit, which was finally compromised for $4000. Before such compromise the second guardian resigned, and her successor paid the judgment of $4000 against the first guardian: *Held,* that as the suit was defended in good faith and resulted in benefit to the ward's estate, the guardian last appointed was, in the settlement of his account, entitled to a credit for the amount of the judgment and costs paid by him, including reasonable attorney's fees.

3. A guardian may not willfully or recklessly incur costs and expenses in litigation, where he knows, or where by the exercise of ordinary prudence and caution he might have known, there was no necessity for litigation. But if he has reason to believe, and does believe, that a claim made against the estate is unjust and illegal, or for too large an amount, it is his duty to refuse its payment, and resist litigation brought to coerce payment, unless it shall appear that he knew, or by the exercise of ordinary prudence and caution could have known, the expense of resistance would greatly exceed any probable benefits resulting therefrom.

4. A guardian, under a special agreement, paid a party $56 for procuring a rebate of $560 on a special assessment of the ward's property

for paving a street, collected many years before his appointment. It appeared that two prior guardians had failed to discover the right to such rebate, and that there was nothing to give him notice of such claim before the attorney proposed to investigate the matter: *Held,* that the guardian was entitled to be credited on his account for the sum so paid for obtaining the rebate.

5. SAME—*costs—in litigation between guardian and ward.* On appeal by both parties from the order of the probate court settling the final account of a guardian, involving over $184,000 of credits and several thousand items, most of which were contested by the ward, the balance found to be due from the ward to the guardian was increased : *Held,* that a judgment against the ward for all the costs and expenses, including reasonable attorney's fees incurred by the guardian on the appeal, was proper.

6. The general rule is, that a *cestui que trust* has a right to demand a full investigation and explanation of the accounts, but the trustee is entitled to be reimbursed for all his costs and expenses in accounting, when it appears he has acted honestly. If both parties are materially in fault, the expenses should be borne equally.

7. Where the trustee has acted in good faith, and his accounts are contested, and it becomes necessary that he should have the assistance of legal counsel, and when the various steps in the litigation over his accounts result in successive diminutions of the balance against him, he will be entitled to his costs and expenses, even though some items of his account are not allowed.

8. SAME—*approval of guardian's account—how far conclusive.* A guardian, in an account which he filed in the probate court on making a partial settlement, was allowed credit for a payment made to a party on a claim, and such account was approved, and no appeal was taken from the order of approval, but an appeal was taken by the ward from a consolidated account filed, which included the item mentioned : *Held,* that the propriety of the credit thus allowed was not open to review, and that the order allowing the same was conclusive on the ward's estate.

9. SAME—*presentation and allowance of claims against the ward.* There being no statute for the presentation and allowance of claims against the estate of a ward, an order of the county court allowing such a claim, and directing the guardian to pay the same, will not have the force and effect of a judgment establishing the validity of such claim. Such allowance is a nullity.

10. SAME—*borrowing money—and mortgaging the ward's lands.* Under certain circumstances the county or probate court, exercising a chancery power in that respect, is empowered to authorize a guardian to borrow money for the prevention of irreparable injury to the estate,

and in such case the statute authorizes the court to empower the guardian to mortgage the real estate of the ward.

11.  Where the statutory steps are taken by a guardian to procure the decree for leave to mortgage the real estate of his ward, so as to confer jurisdiction on that court, such decree, however erroneous, is not void. Until it is reversed on appeal, or otherwise set aside, a mortgage given thereunder will be binding, and the duty will rest upon the guardian to pay the interest accruing upon the mortgage indebtedness.

12.  SAME—*application of the fund—how far restricted.* When a guardian is authorized to borrow money upon mortgage of his ward's land, for the purpose of paying certain claims held by others against the ward's estate, the guardian may properly pay such claims, and he may charge such payment to the ward's estate in his settlement of his accounts.  Money thus borrowed, however, can not be lawfully applied by the guardian to any other purpose than that for which the loan was authorized to be made.

13.  SAME—*questioning the transaction—of the loan and mortgage—at what time.* ·On bill to foreclose a mortgage given by a guardian on his ward's real estate, the ward may have the entire proceedings reviewed, and may interpose every objection that may be found thereto.  If improper items are included in the amount, they may be deducted from the mortgage debt.

14.  LANDLORD AND TENANT—*water rents—liability of the tenant—a lease construed.*  A clause in a lease that the tenant shall pay all water rents taxed, levied or charged on the demised premises during the term, and save such premises and the landlord harmless therefrom, which also provides that the landlord shall pay for any water rent, or for repairs of hydrants, supply or waste pipes or sewers on the premises, which may be ordered by the board of public works, contemplates a rate levied against the leased property as a public charge, such as is contemplated by section 171 of chapter 24 of the Revised Statutes of 1874, and which would be a lien upon the particular property leased.  It does not apply to one of several tenants of a building or block where the water tax assessment is in bulk against the entire block.

15.  CROSS ERRORS—*what matters to be considered.*  Where the ward alone appeals from certain items of account allowed as credits in favor of his guardian, and cross-errors are assigned, both in the Appellate Court and in this court, only such cross-errors will be considered as may relate to that portion of the record brought up by the ward's appeal.

· 16.  APPEAL—*from order approving guardian's accounts—what matters involved.*  There is no distinction between appeals from orders of the county court approving the accounts of administrators, and appeals from orders approving accounts of guardians.  Each item in such an account rendered, depends upon its own merits, having no connection

with the other items. Therefore, an appeal by an administrator or guardian from an order rejecting one or more of his claims against the estate, only brings up for review the propriety of the ruling in respect of rejected claims. The same rule applies in case of an appeal by the heir or ward.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Messrs. WILSON & MOORE, for the appellant Kingsbury.

Mr. R. W. PIKE, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In regard to many of the questions at issue in this case we have adopted the views expressed and the language used by Mr. Justice SCHOLFIELD in the opinion prepared by him prior to the rehearing.

Heman G. Powers, having filed his final account as guardian of Henry W. Kingsbury, a minor, in the probate court of Cook county, asked for an order of that court approving his account and discharging him from further liability as guardian. Upon objections being urged against the account by John V. Le-Moyne, subsequent guardian of Henry W. Kingsbury, the court ordered that "the account of Heman G. Powers, covering his transactions as guardian from February 1, 1876, to February 1, 1887, and his account from February 1, 1887, to the termination of his guardianship be consolidated." And the record thereafter recites: "And such consolidated accounts being presented to the court, the court finds that from the first day of February, A. D. 1876, to the termination of said guardianship, the receipts of the said former guardian have been $179-102.26, and the disbursements for the same time have been $183.626.11, leaving a balance due from the said ward to the said former guardian amounting to $4523.85."

Both parties appealed from the order of the probate court to the circuit court of Cook county, and the appeals were, by

order of that court, consolidated, and heard as one case. The court thereafter referred the case to the master in chancery to take evidence and to state and report the account between the guardian and his ward, and pending the making of that report, Henry W. Kingsbury, having arrived at the age of twenty-one years, was substituted on the record as a party in the place and stead of John V. LeMoyne, guardian. The master thereafter filed his report, and exceptions were filed thereto by both Powers and Kingsbury. Many of the exceptions were allowed, and, from the final decree of the court, Kingsbury alone appealed to the Appellate Court for the First District, and assigned errors presenting the questions hereafter to be considered.. A judgment of affirmance in that court was followed by a further appeal by Kingsbury. Cross-errors were also assigned in the Appellate Court, and have been assigned in this court, by Powers; but inasmuch as he prosecuted no appeal from the decision of the circuit court, they can not be considered any further than they may relate to the portion of the record brought up by the appeal of Kingsbury. *Millard* v. *Harris,* 119 Ill. 185.

Kingsbury's objections to the decree of the circuit court are thus stated in his argument: "First, the charge of water rents, which objection was partially allowed by the master, and wholly denied by the court; second, the costs and attorney's fees paid by the guardian, arising out of the case of *Fanning* v. *Sperry;* third, employment of G. W. Adams, D. J. Hubbard, etc.; fourth, attorney's fees paid by the guardian and charged in his accounts; fifth, attorney's fees and costs in litigating the accounts; sixth, payments to the United States Mortgage Company." In considering these objections, we will, for convenience, take them up not altogether in the order in which they are thus presented.

The first contention of Kingsbury is, that the guardian paid water taxes when the tenant himself had assumed that burden, by virtue of the following clause in the several leases: "And the said party of the second part, for himself, his executors,

administrators and assigns, agrees further to pay (in addition to the rents above specified) all water rents. taxed, levied or charged on said premises for and during the time for which this lease is granted, and save said premises and said party of the first part harmless therefrom : *And provided*, that said party of the first part shall pay for any water rent, or for repairs of hydrants, supply or waste pipes or sewers on said premises, which may be ordered by the board of public works." This manifestly contemplates a rate levied against the leased property as a public charge,—such, for instance, as is contemplated by section 171 of chapter 24 of the Revised Statutes of 1874, and which would be a lien upon the particular property leased. There is no evidence proving the existence or levy of any such rate. The evidence is that the water tax assessment was in bulk against the Kingsbury Block, and that there was no way of assessing it to each separate room. We do not think that the evidence shows any loss, on this account, to the ward, and the evidence fails to show that less was received on account of these leases, for rent, than should have been received.

Anson Sperry, a former guardian of Kingsbury, was authorized by an order of the Cook county court, then exercising probate jurisdiction, to contract for the building of business houses on the ground of his ward, where the former business houses had been destroyed by fire, and he accordingly made contracts for that purpose, one of them being with Patrick Fanning, for the furnishing of cut stone, to the amount of $19,504. Before the buildings were entirely completed, at the instance of Mrs. Lawrence, the mother of Kingsbury, Sperry resigned as guardian, and she was appointed his successor. Sperry claimed, before his resignation, that the estate of his ward was injured in consequence of delay by Fanning in performing his contract, and when the buildings were completed, Mrs. Lawrence refused to pay the balance claimed by Fanning to be due on his contract, because of injury to her ward's

estate resulting from his delay in performing such contract. Fanning thereupon brought suit against Sperry, in the Superior Court of Cook county, on his contract, and also for extras claimed to have been furnished by him beyond the terms of his contract. Sperry employed Messrs. Isham & Lincoln, attorneys-at-law, to defend for him. Fanning claimed $5887.21 as due on the contract and for extras, and also interest thereon. Sperry interposed two defenses: First, that the damages sustained by the failure of Fanning to furnish the cut stone within the time required by the contract, resulting in a postponement of a completion of the buildings, were equal to the amount due to Fanning, and should be set off by the court; second, that a personal judgment could, in no event, be rendered against him, Sperry, on the contract. Judgment was rendered against Sperry for $4574.57. Sperry sued out of this court a writ of error upon that judgment, and we rendered a judgment of affirmance therein at our September term, 1875. A petition for a rehearing of the case was presented to us, and considered and denied at our March term, 1876. (See *Sperry* v. *Fanning*, 80 Ill. 371.) The same counsel represented Sperry in this court that represented him in the trial court, and, after the petition for rehearing was denied, they succeeded in obtaining a compromise with Fanning, whereby he accepted $4000 in satisfaction of his judgment.

Mrs. Lawrence had, before that time, resigned her guardianship, and was succeeded by Powers, who paid the judgment against Sperry and the bill for attorney's fees and costs. That the attorney's fees are reasonable in amount, is not denied, and is clearly proved. The contention of appellant is, that inasmuch as the suit was defended to protect Sperry from a personal judgment, the estate ought not to bear the expense of its defense. In *Sperry* v. *Fanning*, *supra*, we said, quoting from Parsons on Contracts: "A guardian can not, by his own contract, bind the person or estate of his ward, but if he promises, on a sufficient consideration, to pay the debt of his ward,

he is personally bound by his promise, although he expressly promises as guardian; and it is a sufficient consideration if such promise discharge the debt of the ward; and a guardian who thus discharges the debt of his ward may lawfully indemnify himself out of the ward's estate, or, if he be discharged from his guardianship, he may have an action against the ward for money paid for his use."

The contract with Fanning was for the benefit of the ward, and the liability of the guardian, personally, affects merely the form of the remedy, and not the primary source of liability, unless the guardian has been guilty of such negligence or willful malice, causing the suit to be brought, as renders it inequitable that he should be entitled to be reimbursed from the estate of his ward. A guardian is required to observe that care and diligence in the performance of his duties that a good and conscientious business man exercises in his own affairs, under like circumstances. Wharton on Negligence, (1st ed.) secs. 517, 518. He may not, therefore, willfully or recklessly incur costs and expenses in litigation, where he knows, or where, by the exercise of ordinary prudence and caution, he would have known, there is no necessity for litigation. But if he have reason to believe, and does believe, that the claim made against the estate is unjust and illegal, or for too large an amount, it is his duty to refuse its payment and resist litigation brought to coerce payment, unless it shall appear that he knew, or by the exercise of ordinary prudence and caution would have known, the expense of resistance would greatly exceed any probable benefits resulting therefrom. See *Smith v. Bean*, 8 N. H. 15.

The result of Sperry's resisting the claim made by Fanning is shown by the evidence to have been beneficial to the estate. The difference between the amount of $4000, which Fanning finally accepted on the compromise, after the litigation, and $5887.21, the amount he claimed, it will be observed is considerably in excess of $1095, the amount of attorney's fees

and costs paid in making the defense, saying nothing of interest upon the amount claimed by Fanning. It is true, as suggested by counsel for appellant, in argument, it does not appear that Fanning might not have been settled with on terms as favorable to the estate as those obtained after this litigation; but it does not appear that he could, and the burden is on those who allege bad faith or negligence, to prove it. The presumption is that the claim made would have been persisted in. Moreover, after Sperry resigned and Mrs. Lawrence became guardian, the duty of settling with Fanning was upon her, and Sperry ought not to be held responsible for her default. The evidence shows that she reported to the court the existence of the claim of Fanning, but that it could be successfully defended against on account of his breach of contract. It is certainly true that one of the defenses set up was purely personal to Sperry, and if that defense had been sustained, it would not have relieved the estate from ultimate liability on the contract; but it was not sustained, and it does not appear that the interposition of that defense weakened the defense to the merits of the claim, or that the making of it added materially to the attorney's fees or costs which would have been incurred by the defense to the merits of the claim, had that defense only been interposed.

We are therefore unable to say that there is error in the ruling below, in allowing the guardian credit for the payment of these attorney's fees and costs.

It appears that the guardian, in the account which he filed in the probate court on making his first settlement, was allowed credit for the payment made by him to Adams. This account was approved by the probate court, and that approval has never been questioned by appeal. There is no distinction, in principle, between appeals from orders approving accounts of administrators or executors, and appeals from orders approving accounts of guardians, and hence the ruling in *Millard* v. *Harris, supra,* as we have before intimated, is applicable here.

We there held, "each item in an administrator's account rendered, is a separate claim, depending alone upon its own merits, having no connection with the other items; and that an appeal by an administrator from an order or judgment rejecting one or more of his claims against the estate, only brings up for review the propriety of the ruling in respect of rejected items." The item for amount paid as Adams' salary only appearing in the first account, could not therefore be brought before the court by an appeal from orders affecting the second and third accounts alone.

Hubbard was paid $56 for hunting up a rebate of $560 on a special assessment for paving a street, in 1871. The evidence shows that Powers had nothing to call his attention to this claim in behalf of his ward. The three preceding guardians were each under as much obligation to hunt it up as was Powers. They had not done so. They made no report in regard to it, and it does not appear that Powers could have known of it except by information voluntarily communicated, in that regard, by some one else. Hubbard was making a specialty of looking up such claims. He came to Powers and proposed to see if he could find that the estate was entitled to rebates, and to collect whatever he could, for ten per cent on the amount collected. This was what he received from other parties for like services. Powers accepted his proposition, and the amount paid him was this ten per cent on the amount collected. It is apparent from the evidence, that Powers could not have discovered and collected this rebate without aid from others. We think he but did what any good business man would have done under like circumstances, and that he was properly credited with the amount he thus paid.

The guardian is entitled to credit for the amounts paid by him to the United States Mortgage Company, for interest, etc. The contention is, that the county court—*i. e.*, the probate court,—has no power to authorize a guardian to borrow money for the purpose of erecting new and costly buildings upon

unimproved real estate, and that therefore the money bor-
rowed from the United States Mortgage Company, upon which
this interest was paid, was borrowed without authority of law,
and imposed no obligation upon the estate of the ward.

That, under certain circumstances, the probate court, exer-
cising a chancery power in that respect, (*Bond et ux.* v. *Lock-
wood*, 33 Ill. 213,) is empowered to authorize a guardian to
borrow money—under circumstances, as, for instance, for the
prevention of irreparable injury to the estate,—is clear; and
our statute expressly authorizes that court to empower the
guardian to mortgage the real estate. (See Rev. Stat. 1874,
chap. 64, secs. 24, 25, etc.) The several steps pointed out by
those sections were pursued, in this instance, in obtaining the
decree. There was, therefore, authority in that tribunal to
adjudicate, and, at most, its orders were erroneous, only, and
not void. Until reversed on appeal, or set aside by some ap-
propriate proceeding, they were binding, and it was therefore
incumbent on the guardian to pay the interest accumulating
upon the indebtedness. *Gardner* v. *Maroney*, 95 Ill. 552;
*Shoemate* v. *Lockridge*, 53 id. 503 ; *Curtiss* v. *Brown*, 29 id. 201.

The guardian was allowed a credit of $3000 paid Edward
S. Isham. The payment was made on the authority of sev-
eral orders of the county court. Sperry, a former guardian,
made his report to said court in 1873, showing the decision
of this court in the suit of *Kingsbury* v. *Buckner*, (see *Kings-
bury* v. *Buckner*, 70 Ill. 514,) and stating that the result was
a gain of property to the estate of the ward, worth not less
than $30,000, and that Mr. Isham's bill for services rendered
therein amounted to $4000, of which $416 had been paid,
and asking the allowance of the account. On October 20,
1873, the court made an order "that the account of Edward
S. Isham against the said estate, which is presented in the
final report of Anson' Sperry, late guardian of the estate of
said minor, and by which account it appears that there is now
due thereon from the said estate the sum of $3584, be and the

same is hereby approved and allowed, and the said report of the said late guardian is in that respect also affirmed." On May 15, 1876, the court entered another order in relation to the claim, finding that the amount allowed on October 20, 1873, was still due and unpaid, and ordering that the present guardian, Powers, be and "is hereby authorized and empowered to pay said claim and indebtedness, * * * with interest thereon from the entry of said order allowing said sum."

On October 12, 1876, Powers, guardian, presented to the court his petition for leave to borrow from the United States Mortgage Company $95,000 in gold, and for leave to mortgage real estate of his ward to secure the same. In this petition were specified the items of indebtedness for the payment of which the moneys arising from such loan were proposed to be applied. Among these items was the following: "That there is due to Edward S. Isham, upon a claim allowed by the order of this court entered on the 20th day of October, 1873, and the further order of this court entered on the 15th day of May, 1876, the sum of about $3500." The prayer of the petition was, that the guardian "may be empowered and directed by this court to negotiate and make for the said estate, for the uses and purposes above set forth, an additional loan, in gold coin, of a sum of money not exceeding in all the sum of $95,000 in gold, etc., and to execute a mortgage," etc. On November 1, 1876, an order was made and entered of record in the court, "that the prayer of said petition be granted, and that the said guardian be authorized and empowered to make, on behalf of said minor, and upon the faith and credit of his estate, a loan from the United States Mortgage Company, of a sum of money not exceeding the sum of $95,000 in gold coin of the United States, as prayed for in the said petition," etc. On the 11th day of December, 1876, a further order was made by the court, approving the bond, fourteen interest coupon notes, and mortgage, executed by the guardian in conformity with the order of December 1, 1876.

13.—131 ILL.

In *Morgan* v. *Hoyt,* 69 Ill. 489, this court held, that since there is no statute authorizing the allowance of claims against the estate of an insane person, in the hands of a conservator, the allowance of the same in the county court is a nullity, and gives the debt no more force and effect than it had before. There being no statute for the presentation and allowance of claims against the estate of a ward, the same rule announced in *Morgan* v. *Hoyt* must have application here; and the orders of October 20, 1873, and May 15, 1876, can not be given the force and effect of judgments establishing the validity of the Isham claim.

There is no question, however, but that the guardian acted in good faith in paying $3000 out of the proceeds of the $95,-000 loan, in full satisfaction of this claim, thereby obtaining a discount of $584 from the face of the claim, and a relinquishment of the $646 claimed to be due for interest. If the money was paid under the direction of the court, and when it had jurisdiction, under the law, to make the direction, the guardian is entitled to a credit on account of it. Section 4 of chapter 64 of the Revised Statutes of 1874 provides, that "the guardian of the minor shall have, under the direction of the county court, the care and management of his estate." Section 24 of the same chapter provides, that "the guardian may, by leave of the county court, mortgage the real estate of the ward." Section 25 provides: "Before any mortgage shall be made, the guardian shall petition the county court for an order authorizing such mortgage to be made, in which petition shall be set out the condition of the estate, and the facts and circumstances on which the petition is founded, and a description of the premises sought to be mortgaged."

We have already seen, in considering the matter of the interest paid to the mortgage company, that the steps pointed out by the statute were pursued in obtaining the decree under which the loan from and mortgage to that company were made, and that the order of the county court was, at most, merely

erroneous, and not void. The petition presented to the court, in "setting out the condition of the estate," made special mention of the Isham debt, and that indebtedness was one of "the facts and circumstances upon which the petition was founded." We think that making the order allowing the mortgage to be executed in order to effect the loan of the money, to be borrowed for the express purpose of paying this debt, among others, was, in substance and effect, a direction of the court, made at a time when and in respect to a matter in which it had jurisdiction to act, to pay the debt out of the moneys borrowed on the mortgage. The money having been paid in good faith by the guardian, under this decree, which had not been reversed or set aside, this item of the account stands on at least as good a footing as the items for the interest paid by him. See *Gardner* v. *Maroney, supra; Shoemate* v. *Lockridge, supra; Curtiss* v. *Brown, supra.*

The rule in respect to the disposition by a guardian of the proceeds of a sale of the ward's real estate is, that they must be used by the guardian for the particular object contemplated by the court in granting the license to sell. In Schouler on Domestic Relations, 483, it is said : "If he (the guardian) was permitted to sell for the purpose of maintenance and support, the moneys obtained must be so appropriated. If for the payment of debts, those debts must be paid." We think the same rule should be applied in respect to moneys realized from a mortgage of the ward's real estate, that is held in respect to funds arising from a sale of such real estate. Here, the money having been procured by a mortgage of the real estate of the ward for the special purpose of paying this claim, and the payment having been made "under the direction of the county court," it would seem the statute should be held effective for the protection of the guardian, at least in the absence of any proof tending to show the expenditure was not for the benefit of the ward and his estate. Our conclusion is, that appellee is entitled to a credit for the $3000 in question.

In our opinion, the evidence sustains the credit for the payment of $145 made to Waite & Clark, and also the credit for the payment of $805 made to Isham & Lincoln. We deem it unnecessary, however, to recapitulate, and comment upon the evidence as to either of these items.

Objection is made to the charge of $71.46 for money paid E. B. McCagg. The charge is made up of two items—one for legal advice given to the United States Mortgage Company, and the other for the service of certain papers on Mrs. Lawrence, who was in Europe at the time. The advice was given and the papers served, and both paid for by the mortgage company and charged up against the estate, prior to the time appellee became guardian. There were two mortgages on appellant's real estate, made by a former guardian, prior to the execution of the mortgage for $95,000. The company had an account against the estate, amounting to $19,906.13, for taxes paid and tax certificates on the land, and which account also included these two items, and this $19,906.13 went to make up the debts for the payment of which the $95,000 was borrowed. Powers did not in fact receive from the company any part of this $19,906.13, but it was retained by the company.

It does not sufficiently appear from affirmative testimony, that McCagg gave any advice or served any papers, or that the charges made therefor were reasonable, or that he was acting for the estate. It appears, however, that the mortgage for $95,000 recites it was executed by the guardian "for the purpose of administering and charging, so far as he lawfully may, only the estate of said minor." In *Kingsbury* v. *Sperry*, 119 Ill. 279, in which the cases of *Kingsbury* v. *Sperry et al.* and *Kingsbury* v. *Powers* were also considered, it was said by this court, that when bill was filed to foreclose the mortgages, there would be, "beyond all question, ample opportunity to the ward to have the entire proceedings reviewed, and to interpose every objection that could be urged." The items in question, if improper, can be deducted on foreclosure. If they are so

deducted, there would be, in case they are stricken out here, a double recovery. If they are shown to be just, and are not deducted, then, in justice, appellant ought to pay them, and it would be inequitable to charge them to appellee, who neither contracted the indebtedness to McCagg nor received the money with which to pay it; and if appellant voluntarily pays, without objection, it would be an admission of the propriety of the charge here made by appellee. Besides this, the money having been borrowed and the land mortgaged by leave of the court, in part for the purpose of paying the indebtedness to the company, which included these items, it would seem the rule we have announced in respect to the items for interest paid, and for amount paid to Isham, would also govern in respect to these items for the protection of the guardian. We are unable to say the allowance of this $71.46 was erroneous.

We think the evidence sustains the payment of $1500 to Pike for contesting the accounts of the former guardian. As to the other payments to attorneys, no specific objection is pointed out, other than that it appears that the gross amount paid for attorney's fees for settling the estate is large.

The circuit court ordered that Powers "have and recover from the said Henry W. Kingsbury, and from his estate, all costs and expenses, including reasonable attorney's fees incurred by said Powers on this appeal, in maintaining and defending his said accounts." The disbursements shown by the accounts of the guardian, which were involved in this litigation, amounted to $184,485, and objections were made to about $150,000 of this amount. In the probate court $858.89 of these disbursements were disallowed. In the circuit court, on the appeal, the items which the guardian claimed as credits, and which that court refused to approve, amounted to $822.61. Powers, then, was the successful party in the appeal, and the order made by the court was only in respect to the costs and expenses in that court, upon the appeal. In a litigation of this sort, where the accounts involve considerable amounts and

several thousand items, and nearly all of them are contested, it is unreasonable to expect that a guardian, even though he may be honest and faithful in the performance of his duties, will always be able to establish, by satisfactory proof, each and every item of his accounts. The general rule is, that the *cestui que trust* has a right to demand a full investigation and explanation of the accounts, but the trustee is entitled to be reimbursed for all his costs and expenses in accounting. If both parties are materially in fault, the expenses should be borne equally. *(Smith* v. *Kennard,* 38 Ala. 695 ; *Woodruff* v. *Snedecor,* 68 id. 437 ; *Sherman* v. *Angell,* 2 Hill's Ch. 26 ; *Moses* v. *Moses,* 50 Ga. 9 ; *Blake* v. *Pegram,* 109 Mass. 558.) Where, however, the trustee has acted in good faith and his accounts are contested, and it becomes necessary he should have the assistance of legal counsel, and where the various steps in the litigation over his accounts result in successive diminutions of the balance against him, he is entitled to his costs and expenses, even though some items of his account are not allowed. *Yoder's Appeal,* 45 Pa. St. 384; *McElhenney's Appeal,* 46 id. 348 ; *Smith's Appeal,* 47 id. 425 ; *Bendall's Distributees* v. *Bendall's Admr.* 24 Ala. (N. S.) 305 ; *Pincknard's Distributees* v. *Pincknard's Admr.* id. 250 ; *Ashley* v. *Martin,* 50 id. 537; *Caldwell* v. *Young,* 21 Texas, 800.

In view of all the circumstances, we are inclined to the opinion that the conduct of those objecting to the accounts of the guardian, at least since the rendition of the judgment in the probate court upon the reports and accounts there filed, has been contentious and unreasonable, and that the order of the circuit court allowing the guardian his costs and expenses upon the appeal, was not error.

We find no manifest error in the record, and the judgment of the Appellate Court is affirmed.      *Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.