# Edward C. Williams, Adm'r, v. Sterns Paper Company.

1. VOLUNTARY ASSIGNMENTS—*Authority of Assignee to Continue Business, etc.*—The County Court, proceeding under the assignment act, derives its power solely from the statute, and no authority is there given to empower an assignee to continue the business of an insolvent debtor at great expense and to borrow money or create an indebtedness for that purpose. Any order of the County Court, authorizing such a course or providing that the assignee may issue certificates for such indebtedness, making the same a first lien upon any property or effects belonging to the insolvent's estate which may come into the possession of the assignee, is invalid and in no wise affects the rights of parties holding prior liens.

2. SAME—*Personal Liability of the Assignee.*—Under the assignment act the assignee is, in many respects, absolutely subject to the control

and direction of the County Court, while in some respects he has common law powers and is subject to common law liabilities. What his position as to personal liability may be, depends upon the facts and circumstances of each particular case.

3. SAME—*When the County Court Acquires Jurisdiction.*—When an assignment is made and recorded, the County Court, in the character of an insolvent debtor's court, by operation of law, at once acquires jurisdiction over and becomes possessed of all the property and estate embraced within the assignment. The assignee, the insolvent debtor, and all persons claiming an interest in or upon the fund, are subject alike to the summary jurisdiction of that court.

4. SAME—*Liability When the Assignee Has No Authority to Create the Debt.*—A trustee is frequently held to be personally liable simply because he had no authority to create a contract obligation on the part of his principal.

5. SAME—*Relation of Assignee and His Creditors.*—The relations of an assignee continuing the business of an insolvent debtor, and the creditors, are those of trustee and *cestui que trust.* Their rights, duties and obligations as to each other are those of, and are to be determined by the rules governing the relation of, trustee and *cestui que trust.*

6. SAME—*Personal Liability of the Assignee in General.*—A private trustee is bound personally by the contracts he makes as trustee, although describing himself as such, and nothing will discharge him but an express provision, showing clearly that both parties agreed to act upon the responsibility of the fund alone, or of some other responsibility exclusive of that of the trustee, or some other circumstance clearly indicating another party who is bound by the contract, and upon whose credit alone it is made.

7. SAME—*What Will Not Discharge the Assignee.*—The mere use by a promisor of the name of trustee, or of any other name of office or employment will not discharge him. Some person must be bound by the contract, and if he does not bind some other person he binds himself, and the official name is then only regarded as describing and designating him.

8. EQUITABLE ESTOPPEL—*Of a Claimant in Probate Proceedings.*—Where a person files a claim against the estate of an insolvent in proceedings under the voluntary assignment act and receives a dividend declared therein by the court, he will be estopped in equity from seeking to enforce a personal liability afterward by presenting a claim for the balance due on the claim against the estate of the person who acted as assignee.

9. SAME—*Person Furnishing Merchandise to Assignee.*—Where an assignee is continuing the business of his insolvent, at the special instance and request of persons afterward furnishing him goods for that purpose, and upon orders signed by him as such assignee, such persons are estopped from claiming that such assignee is personally liable for the goods so ordered.

Williams v. Sterns Paper Co.

Claim in Probate.—Trial in the Circuit Court of Cook County; the
Hon. ARBA N. WATERMAN, Judge, presiding. Finding and judgment
for claimant. Appeal by the administrator. Heard in the Branch
Appellate Court at the March term, 1898. Reversed and remanded with
directions. Opinion filed October 21, 1898.

BANGS, WOOD & BANGS, attorneys for appellant.

An assignee, under our voluntary assignment act, takes
the title of the assigned estate, but the court takes the pos-
session of it, whereby the estate is placed in *custodia legis*.
Hanchett v. Waterbury, 115 Ill. 220; Preston v. Spaulding,
120 Ill. 208.

The assignee's possession and management of the as-
signed estate is the County Court's possession and manage-
ment thereof, and the trust funds in the hands of the
assignee are to be handled, paid over and distributed as
ordered by the court, and these orders, until modified or
reviewed and changed, must be obeyed by the assignee, who
has no discretion in the matter, except to carefully and in
good faith obey them.    Freydendall v. Baldwin, 103 Ill.
325; Hanchett v. Waterbury, 115 Ill. 220; Farwell v. Cran-
dall, 120 Ill. 70.

The relation of an assignee, under the voluntary assign-
ment act, to the County Court, is closely analogous to that
of a receiver in a court of equity; more closely than that
of an administrator, a mere trustee, guardian, or that of any
other fiduciary relative. Hanchett v. Waterbury, 115 Ill.
220; Hooper v. Winston, 24 Ill. 354; Republic Life Ins. Co.
v. Swigart, 135 Ill. 173-5; Jackson v. Lahee, 114 Ill. 287;
Mulcahey v. Strauss, 151 Ill. 70.

An assignee at common law as to his duties and responsi-
bilities occupies a materially different legal position from
that of an assignee under our voluntary assignment act.
Both are personally responsible for want of ordinary care
and prudence.    In other respects they are widely different.

The court is vested with full and complete jurisdiction
over every voluntary assignment, and in exercising such
jurisdiction that court, a vacancy occurring, may appoint an
assignee and control his acts precisely as a court of equity

may appoint and control the acts of its receiver. In such cases the assignee and the receiver stand alike under the protection of the court's orders, so long as such orders are in good faith carefully obeyed. The discretionary powers of both are alike limited. Both are alike officers of the court. Both are alike under the full and complete control of the court. Freydendall v. Baldwin, 103 Ill. 325; Hooper v. Winston, 24 Ill. 354; High on Receivers, Sec. 286.

An assignee under our voluntary assignment act, like a receiver, being an officer of the court, has no power to make contracts without the authority of the court, and all persons contracting with him are chargeable with knowledge of the law and enforcement of contracts, of his functions in this regard, and contract with him at their peril. Especially the law as it affects the validity, construction and enforcement of the contract. High on Receivers, Sec. 186.

When a valid assignment under the act is made, the estate must be administered and distributed substantially in conformity with its provisions, and it is a matter of little, if any, consequence as to just where the legal title is or by what method it was acquired except in so far as it affects the jurisdiction of the court. Hanchett v. Waterbury, 115 Ill. 228.

TENNEY, McCONNELL COFFEEN & HARDING, attorneys for Sterns Paper Co., appellee.

NEWMAN, NORTHRUP & LEVINSON, attorneys for Ansbacher & Co., appellee.

By the purchase of the goods, the assignee became personally liable therefor, even though he bought them for use in the business which he was conducting as assignee. Perry on Trusts, Sec. 437; Johnson v. Leman, 30 Ill. App. 370 (131 Ill. 609); Goodman v. Lee, 40 Ill. App. 229; Rand, McNally & Co. v. Francis, 67 Ill. App. 225; Sperry v. Fanning, 80 Ill. 371; Nichols v. Sargent, 125 Ill. 309; 2 Woerner on Administration, 756; 27 Am. & Eng. Encyl. of Law, 128.

MR. JUSTICE HORTON delivered the opinion of the court.

January 18, 1892, the R. S. Dickie Mfg. Co., an Illinois corporation, made a voluntary assignment for the benefit of creditors, naming Allen F. Moore as assignee. January 22, 1892, the County Court entered an order authorizing and directing assignee Moore to continue the business. He did so until his successor was appointed, contracting an indebtedness of $4,892.97. At the request of the creditors, including the appellee, said Moore resigned, and George E. Lloyd consented to act as such assignee. January 30, 1892, an order was entered by the County Court accepting the resignation of said Moore and appointing said Lloyd as his successor. The same day, and also at the request of the creditors of said assignor, an order was entered by the County Court authorizing said assignee Lloyd to "continue said business under his own management as in his own judgment shall be deemed best." Said Lloyd continued said business under and in obedience to said order until October 14, 1892, when he resigned, and his successor was appointed. During the time said business was being conducted by said assignees, appellees furnished merchandise for the payment of the balance due, upon which said appellee now claims that said assignee Lloyd was personally liable.

Said Lloyd having departed this life and his estate being administered in the Probate Court of Cook County, appellee, March 22, 1895, filed in said Probate Court, in the matter of said estate, its claim for the balance alleged to be due to it as aforesaid. Upon a hearing in that court the claim was disallowed. Appellee appealed to the Circuit Court. In the latter court a jury was waived and the cause submitted to the court for trial, whereupon appellee obtained a finding and judgment in favor of said claim. An appeal from that judgment by the administrator brings the cause to this court.

The personal liability of the assignee Lloyd, and consequent liability of his estate, is the vital question before the court. There is no real contest as to the delivery of the

goods or their value, or of the correctness of the claim as to amount.

In Sperry v. Fanning, 80 Ill. 371, 375, in considering the question of the personal liability of appellant upon a contract made by him while acting as a guardian, quoting from Parsons on Contracts, that court, speaking of the contract of a private trustee, states the rule thus: "He is bound personally by the contracts he makes as trustee, although describing himself as such, and nothing will discharge him but an express provision, showing clearly that both parties agreed to act upon the responsibility of the funds alone, or of some other responsibility exclusive of that of the trustee, or of some other circumstance clearly indicating another party who is bound by the contract, and upon whose credit alone it is made. The mere use by the promisor of the name of the trustee, or of any other name of office or employment, will not discharge him. Some one must be bound by the contract, and if he does not bind some other he binds himself, and the official name is then only regarded as describing and designating him."

That case has been several times referred to approvingly, and the rule as above quoted may be regarded as the settled law of this State. Nichols v. Sargent, 125 Ill. 309; Kingsbury v. Powers, 131 Ill. 182, 188; Chicago Fire Place Co. v. Tait, 58 Ill. App. 293.

In Hooven v. Burdette, 153 Ill. 672, said order of January 30, 1892, authorizing said Lloyd to continue said business was under consideration, and that court said (p. 681): "The County Court, proceeding under the assignment act, derives its power solely from the statute, and no authority is there given to authorize or empower an assignee of an insolvent debtor to continue business at great expense and to borrow money or create indebtedness for that purpose. Any order of the County Court, therefore, authorizing this, or providing that the assignee might issue certificates for such indebtedness, and that the same should be a valid or first lien upon any property or effects belonging to said estate which might come to the hands of the assignee,

would be an improper and invalid order and would in no wise affect the rights of parties holding prior liens."

As in all cases, this language must be construed in the light of the facts then before the court, and the question under consideration. The question then was whether, under said order of the County Court, the assignee could create an indebtedness and issue certificates therefor which should be a valid and first lien as against parties holding prior liens. As to such prior liens, the order was held to be improper and invalid.

In the case at bar it is urged, on behalf of appellant, that under the statute of Illinois the property of an assignor is in law in the possession and under the absolute control of the County Court; that it is in *custodia legis*, and that as to such property the assignee is entirely subject to the order and direction of the County Court, and that if he acts under and in compliance with the orders of that court, he will be fully protected from any personal liability in so doing. On the other hand, it is urged on behalf of appellee, that the assignee is personally liable in all respects the same as at common law under a voluntary assignment. Neither of these contentions is strictly correct. Under the assignment act the assignee is, in many respects, absolutely subject to the control and direction of the County Court, while in some respects he has common law powers and is subject to common law liabilities. What his position as to personal liability may be, depends upon the facts and circumstances of each particular case. When an assignment is made and recorded, the County Court "in its character as an insolvent debtor's court, by operation of law at once acquires jurisdiction over, and becomes possessed of all the property and estate embraced within the assignment. * * * The assignee, the insolvent debtor, and all persons claiming an interest in or upon the fund are subject alike to the summary jurisdiction of that court." Hanchett v. Waterbury, 115 Ill. 220, 228.

After the making of said assignment and after the jurisdiction of the County Court had attached and that court

was exercising such jurisdiction, two meetings of creditors of the insolvent were held. Appellee was the largest creditor, and was represented at such meetings by its Mr. Sterns, who was made the chairman. One result of this meeting was that at the "special instance and request" of these creditors the County Court entered the order of January 30, 1892, authorizing said Lloyd as assignee to continue the business and to incur indebtedness in so doing. Said Lloyd at the special instance and request of such creditors, and under and in compliance with said order of the County Court, continued said business about eight months. During that time the assignee purchased goods and supplies for the conducting of said business from the appellee and others. It is to recover the balance due for goods so purchased that said claim of appellee was filed in the Probate Court against the estate of said Lloyd, now deceased.

As stated in the foregoing quotation from the Sperry case, "some one must be bound by the contract, and if he (the trustee) does not bind some other, he binds himself." Ordinarily the converse of this is true, i. e., if he does bind some other he does not bind himself. The trustee is frequently held to be personally liable simply because he had no authority or power to create a contract obligation on the part of his principal, and not for the reason that the principal shall not in any event be required to make proper compensation.

In Kingsbury v. Powers, 131 Ill. 182, 189, the court says: "The liability of the guardian, personally, affects merely the form of the remedy, and not the primary source of liability." This case involved or grew out of the same transaction and was for the same debt as that in the Sperry case. Mr. Powers, the successor of Sperry, as guardian, paid to Sperry the amount he was compelled to pay because of his personal liability as held in the Sperry case above cited. In adjusting the accounts of Powers, guardian, objection was made to that part of his account where he credited himself with the amount thus paid to Sperry. The objection was overruled upon the theory that the estate of the ward was

liable to Sperry for the amount he had thus been compelled to pay. It follows that if the estate had been primarily liable, the guardian would not have been held to be personally liable. It also follows that if the claim against Sperry had been originally presented and allowed against the estate it could not have been afterward held that Sperry was personally liable therefor. The basis of the holding that Sperry was liable was the further holding that the estate was not primarily liable for the amount due upon the Fanning contract.

Apply the principles of the Sperry and the Kingsbury cases to the case at bar. Here it has not been held that the estate of the insolvent represented by Lloyd as assignee was not primarily liable for the amount due to appellee. On the contrary, it has been held by the County Court at the instance of appellee and other creditors similarly situated, that said estate is thus liable. The appellee presented its claim in the County Court against said insolvent estate, and caused the same to be adjudicated upon and allowed, and a dividend declared thereon and collected, and received such dividend from the successor of said Lloyd as assignee. This could have been done only upon the theory and holding that said insolvent estate was primarily liable. If that be correct, then Lloyd could not be held to be personally liable upon the theory or because the estate for which he was acting was not liable. The two positions are absolutely antagonistic, and can not both be held to be correct. The appellee, having chosen to hold the estate of the insolvent liable, and having succeeded in so doing, should not now be permitted to charge upon the estate of Lloyd, deceased, the same claim. The facts in this case bring it within the exception to the general rule stated in the Sperry case, that is to say, there are " other circumstances clearly indicating another party who is bound by the contract and upon whose credit alone it was made."

But there is another reason why this claim should not be allowed against the estate of Lloyd. The appellee is equitably estopped from thus enforcing it. The relations of Mr.

Lloyd as assignee, and of the appellee, were those of trustee and *cestui que trust.* Their rights, duties and obligations as to each other are those of, and are to be determined by the rules governing the relation of trustee and *cestui que trust.*

One of the counsel filing brief for appellee stated in the court below, as appears by the record here, that appellee and the other creditors who had furnished goods to the assignee under the order of the County Court "knew that the business was being run and operated by the assignee under the order of this (the County) Court. The order was entered at their special instance and request." We need not, therefore, refer to the record further as to that fact. The treasurer of the appellee, referring to orders by assignee for goods, testified as follows: "They were in every case written orders, and were received by mail signed by George E. Lloyd, assignee. In one or two instances orders were received not signed by George E. Lloyd, assignee, and were at once returned for his signature, and goods were not shipped until orders were received, properly signed by George E. Lloyd as assignee. I can not produce these orders, as they were destroyed by fire in November, 1893."

As before stated, it was at the "special instance and request" of appellee (with other creditors) that the orders were entered by the County Court appointing said Lloyd, assignee, and authorizing him to continue the business of the insolvent. Appellee "knew that the business was being run and operated by the assignee under the order of said court." "Upon the faith of that order," and upon the orders in writing of said Lloyd, as assignee, appellee furnished goods for the purpose of, and to be used in, continuing said business, knowing that the same were to be so used. Afterward the claim of appellee was presented in and allowed by the County Court, and ordered to be paid in full out of the insolvent's estate, as a prior claim to that of certain lienors. Upon an appeal by the lienors, the Supreme Court held that the claims of lienors should be first paid (153 Ill. 672, 681, *ante*). Upon the redocketing of

said cause, the County Court, in obedience to the direction of the Supreme Court, ordered the payment in full of the amounts due to said lienors, and that the balance in the hands of the (then) assignee be by him distributed among the creditors of former assignees (Lloyd and his predecessor), "whose claims have been allowed and still remain unpaid." The amount to be thus paid to appellee was specified in the order. The claim of appellee was by this order in effect adjudged to be a preferred claim as against the general creditors of the insolvent's estate, and its payment out of said estate to be subject only to prior existing liens upon specific property which came to the assignee. The County Court, by said decree or order of distribution, found that appellee was in court in said proceeding and consented to the entry of said decree. It was also by said decree provided as follows: "The acceptance by any creditor of the money hereby ordered paid to such creditor shall be deemed a consent by such creditor to the terms and conditions of this order." Appellee received and accepted the money in said order provided to be paid.

These facts clearly show an equitable estoppel. The Probate Court has jurisdiction to recognize and enforce such an estoppel in the matter of allowing or disallowing a claim against a decedent's estate.

In a certain sense the assignee, Lloyd, was agent for the creditors, including appellee. He was continuing the business at their "special instance and request." Upon his orders, given specifically as such agent, appellee delivered the goods in question. It is estopped by its conduct from now claiming that such agent was personally liable to it for goods so ordered.

It appears that there is included in the claim of appellee nearly $750 balance due for goods ordered by the predecessor of said Lloyd. We are not advised as to any theory upon which it is claimed that Lloyd could be held personally liable for that. But as the judgment of the Circuit Court must be reversed for the reasons stated, we merely refer to this.

Under the views above expressed, the cross-errors are immaterial.

The judgment of the Circuit Court is reversed and the cause remanded, and that court will enter judgment against the appellee. Reversed and remanded, with directions.