HENRY W. GARDNER

*v.*

JAMES MARONEY.

*Filed at Ottawa June 16, 1880.*

1. CONSERVATORS *of insane married women—of the power to appoint—and of the sale and conveyance of estates.* The statute of 1845 relating to the "appointment of a conservator of an insane or distracted person having an estate, real or personal," and the statute of 1853 relating to "the sale of real estate of lunatics or distracted persons," applied to insane married women, as well

as others, and this notwithstanding, at the time those statutes were passed, the common law governing the rights of married women obtained in this State.

2.  So, under those statutes, the county courts had the power to appoint a conservator for an insane married woman having an estate, and the circuit courts had the power, upon a proper application of the conservator so appointed, to authorize him to sell and convey the real estate of such insane person.

3.  While under the common law it was undoubtedly, in general terms, the peculiar province of the husband to have the care and management of the wife's property and the custody of her person, and his duty to support her, whether sane or insane, yet his right to the care and management of her property did not extend to her separate estate. And in a case where the husband was unable to support an insane wife who had an adequate separate estate settled upon her without the intervention of a trustee, it is not doubted that a court of chancery, under its general powers, aside from our statute, might have appointed a conservator or trustee—either the husband or some one else, as might have been deemed most advisable—to sell and convey property for her support.

4.  Conveyances by conservators are in no sense to be regarded as conveyances by the lunatic;—they are conveyances made by the law for the benefit of the lunatic, and are analogous to conveyances by guardians and administrators.

5.  So, it can not be objected to a conveyance by the conservator of an insane married woman that there could be no conveyance by her, even of her separate estate, without joining with her husband,—for the acts in reference to conveyances by married women have no relation whatever to conveyances by conservators. The latter are governed entirely by the statute in relation to idiots and lunatics.

6.  SAME—*conservator's deed, when it may be questioned.* Aside from the question of jurisdiction in the appointment of a conservator, and in the proceeding to authorize the conservator to sell and convey land, the question whether there was a proper case for the exercise of the jurisdiction in respect of the kind of property sought to be sold, or the necessity for its sale, can not be made in a collateral proceeding, as, in an action of ejectment where one of the parties claims under the conservator's deed.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. ADLAI T. EWING, for the appellant:

1.  The defendant's title must fail, because the proceedings had by the county court of Cook county appointing Ira J.

Nicholes conservator, etc., and the proceedings had by the Superior Court decreeing the sale of the premises in question, are void for want of jurisdiction.

The statute of 1853 authorized the sale of the real estate of lunatics, etc., " for the purpose of paying debts, supporting a family or educating children," neither of which causes apply to insane married women, married women having no power to contract debts, and not being bound for the support of the family or education of the children.

The rule is inflexible that a *feme covert* can only convey her real estate by a strict compliance with the statute providing for such alienation. *Lindley* v. *Smith,* 46 Ill. 524; *Russell* v. *Ramsey,* 35 id. 370; *Hughes* v. *Lane,* 11 id. 128; *Law* v. *Soulard,* 15 id. 123; *Mason* v. *Brock,* 12 id. 273; *Garrett* v. *Moss,* 22 id. 363; *Hogan* v. *Hogan,* 89 id. 427; *Mariner* v. *Saunders,* 5 Gilm. 125.

Does the Married Woman's act of 1861 enlarge the statute enabling *femes covert* to convey so as to apply to insane married women? Until the law of 1869, the husband was responsible for the debts of the wife contracted before marriage, and became the owner of her personal property when reduced to possession, and entitled to a life estate in her realty, and to the entire proceeds of her time and labor. *Martin et al.* v. *Robson,* 65 Ill. 138; *Conner* v. *Berry,* 46 id. 371; *McMurtry* v. *Webster,* 48 id. 123; *Hogan* v. *Hogan,* 89 id. 427.

2. Were the appointment of the conservator and the proceedings in the Superior Court decreeing that the conservator sell the premises *res adjudicata,* and can the jurisdiction of the court in these proceedings be attacked collaterally?

We understand the rule to be, that you can not, *dehors* the record, attack the jurisdiction of a court of superior jurisdiction in a collateral proceeding, but if on the face of the record the court did not have jurisdiction, then the judgment of the court is void. *Andrews* v. *Burnhardi,* 87 Ill. 365; *Donlin* v. *Hettinger,* 57 id. 348; *Osgood* v. *Blackmore,* 59 id.

261; *Barnet* v. *Wolf,* 70 id. 76; *Logan* v. *Williams,* 76 id. 175; *Clark* v. *Thompson,* 47 id. 25; *Young* v. *Thompson,* 14 id. 380; *Goudy* v. *Hall,* 30 id. 109.

Equity follows the law, but never abrogates or violates its provisions. *Rogers* v. *Higgins,* 48 Ill. 211.

Messrs. L. & P. TRUMBULL, for the appellee :

The county court had jurisdiction to appoint the conservator of a married woman in October, 1861. Rev. Stat. 1845, ch. 50; Acts of 1851, p. 96; *Guardianship of Eliza Fegan,* 45 Cal. 176; *Drew's Appeal,* 57 N. H. 182; *Wing* v. *Dodge,* 80 Ill. 564.

The Superior Court of Cook County on June 16, 1865, had jurisdiction to order the sale of the real estate of Mrs. Burgen for the support of herself and family. 1 Gross' Stat. 333.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of ejectment, by appellant against appellee, to recover the possession of certain premises in Cook county. The parties seem to claim title from a common source—one W. T. S. Lavinia. Appellant claims by virtue of a conveyance from Sophia Adele Baxtram, only child and heir at law of Medora J. Burgen, who was the only child and heir at law of said W. T. S. Lavinia. Appellee claims through several *mesne* conveyances, under a deed made by one Ira J. Nicholes, as conservator of the said Medora T. Burgen, pursuant to a decree of the Superior Court of Cook County and a sale thereunder.

Nicholes was appointed conservator of Medora Burgen by an order of the county court of Cook county on the 11th of October, 1861, she having been, by an order of the same court, made on the 24th of September, 1861, found to be a lunatic. At the time of this appointment she had a husband living— Edward Burgen, who survived her.

On the 16th of June, 1865, Nicholes, as such conservator, filed his petition in the office of the clerk of the Superior Court of Cook County, against Edward Burgen and Sophia Burgen, alleging therein that, on the 24th of September, 1861, Medora T. Burgen was, by the county court of Cook county, found to be a lunatic; that petitioner was, on October 11, 1861, appointed conservator of her estate; that she was the wife of Edward Burgen, and had one child—Sophia Burgen; that said Medora T. Burgen and Sophia Burgen were then residents of Cook county; that said Edward Burgen and Sophia Burgen were the only persons interested in the estate of Medora T. Burgen; that there had come to his hands, since his appointment as conservator, $794.50, and, as such conservator, he had expended in the support of said Medora T. Burgen and family, $804.99; that said Medora T. Burgen was then the owner of certain real estate which was described, and which included the premises in controversy; that he had no means in his hands, as conservator, for the support of said Medora T. Burgen and her family, except by sale of the land aforesaid; and that a sale of said premises was necessary for the purpose of paying debts incurred for the support of the said Medora T. Burgen and family. The prayer was that a sale of said premises might be directed to supply petitioner with means for the support of said Medora T. Burgen and family.

Edward Burgen entered his appearance, and filed an answer setting up the same facts, substantially, as those set up in the petition. Summons was issued and served upon Sophia Burgen, and William McKindley was appointed a guardian *ad litem*, and, as such, filed answer for her.

The decree found the facts to be as set forth in the petition, and decreed a sale of the premises by the conservator.

The main objection urged against appellee's title is that the proceedings had by the county court of Cook county, appointing Ira J. Nicholes, conservator, etc., and the proceedings had by the Superior Court of Cook County, decreeing the sale of the premises in question, are void for want of jurisdiction.

And it is argued that the statute of 1845, relating to the "appointment of a conservator of an insane or distracted person, having an estate, real or personal," and the statute of 1853 relating to "the sale of real estate of lunatics or distracted persons," which statutes were in force at the time of the pretended appointment of Ira J. Nicholes as conservator of Medora T. Burgen, and at the time of the pretended sale of her real estate, did not apply to *an insane married woman,* because, at the time these statutes were passed, the common law governing the rights of married women obtained in this State. This quotation is then made from 1 Blackstone's Coms. 441, *442 : " By marriage the husband and wife are one person in law, that is, the very *being* or *legal existence* of the woman is suspended during the marriage, at least is incorporated and consolidated into that of the husband, under whose wing, protection and cover she performs everything."

But this was only so at law. Courts of equity, for many purposes, treated the husband and wife as distinct persons, capable (in a limited sense) of contracting with each other, of suing each other, and of having separate estates, debts and interests. 2 Story's Equity Jurisprudence, § 1368; Adams' Eq. (6th Am. ed.), 132, *et seq.* *44–5.

It was, undoubtedly, as contended by counsel, under the common law, in general terms, the peculiar province of the husband to have the care and management of the wife's property, and the custody of her person; and it was his *duty* to support her whether *sane* or *insane.* But the husband's right to the care and management of the wife's property did not extend to her separate estate. This, whether settled on her through the medium of trustees or otherwise, the husband had no right to intermeddle with. And a court of equity would protect, as a gift to the wife for her separate estate, the husband's right in property belonging to her at the time of her marriage, which he was entitled to by virtue of the marriage, under a state of facts showing that he intended to make a gift of the same to her. *Gill* v. *Woods, Admr.* 81 Ill. 64.

In a case where the husband was unable to support an insane wife, who had an adequate separate estate settled upon her, without the intervention of a trustee, we can not doubt that a court of chancery, under its general powers, aside from our statute, might have appointed a conservator or trustee—either the husband or some one else, as might have been deemed most advisable—to sell and convey property for her support. It could not have been tolerated that an insane person should have been permitted to suffer for proper care and support, or to become a public charge, who had an ample separate estate, merely because she happened to have an impecunious or worthless husband. *Davenport* v. *Davenport*, 5 Allen, 464.

Conveyances by conservators are, in no sense, to be regarded as conveyances by the lunatic. They are conveyances made by the law for the benefit of the lunatic, and are analogous to conveyances by guardians and administrators. There is, therefore, no force in the argument that there could be no conveyance by the conservator because there could be no conveyance by the *feme covert*, without joining with her husband. The acts in reference to conveyances by married women have no relation whatever· to conveyances by conservators. The latter are governed entirely by the statute in relation to idiots and lunatics.

The first section of the act entitled "Idiots and Lunatics," approved March 3, 1845, provided that "Whenever *any* idiot or lunatic or distracted person," without any limitation or qualification whatever, "has any estate, real or personal," a conservator may be appointed, etc. And the first section of the "Act to provide for the sale of the estates of insane persons," approved February 12, 1853, provides, "that whenever it shall become necessary to sell the estate of idiots, lunatics, or distracted persons," (here again, it will be observed, the language is as comprehensive as it is possible to make it,) "for the purpose of paying debts, supporting a family or educating children, or when it shall be deemed proper to make such sale for the purpose of investing the proceeds in real

estate, the conservator shall petition the circuit court," etc., etc. The fact that no provision is made for disposing of dower interests, or the estate for life or by the curtesy of the husband, only shows that the statute is less complete and perfect in its details than it is desirable it should be. It certainly does not prove that the language of the statute does not mean what it plainly imports.

We think it was competent to appoint a conservator for the estate of an insane married woman, and that, on a proper showing, it was competent to decree a sale and conveyance of her estate, by the conservator. Like ruling obtained in *Guardianship of Eliza Fegan,* 45 Cal. 176; *Drew's Appeal,* 57 N. H. 181.

We do not consider that when those cases were decided in the respective States, married women had larger separate property interests, and more complete control thereover, than they had here when Nicholes was appointed conservator and obtained the decree of sale, of any consequence in principle, for here, married women have always been protected, in equity, in the ownership and enjoyment of separate estates, when property has been settled upon them, even without the intervention of trustees. And as to such property, in the event of insanity, there has always been the same necessity for the appointment of a conservator that there is where the law protects the married woman in owning and possessing, as her separate property, all her acquisitions and earnings.

Whether, in the present case, the property of Medora T. Burgen was such property as a conservator ought to be allowed to take charge of, is, perhaps, not a material question. The county court had jurisdiction to appoint conservators. Medora T. Burgen was a lunatic, and was properly before the court. The Superior Court had jurisdiction to decree sale of real estate of lunatics, by conservators, for paying debts, supporting family, etc. A proper petition was filed, all the parties in interest were before the court, there was jurisdiction of the person and of the subject matter. Whether the

court judged correctly in regard to this being the kind or class of property of which a sale should be decreed, or in regard to the necessity of a sale, could not be inquired into in a collateral proceeding. It is not jurisdictional. If erroneous, it could only be taken advantage of on error. *Young* v. *Lorain et al.* 11 Ill. 624. If the jurisdiction of the court extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction. *Cox* v. *Thomas*, 9 Gratt. 323; *Bostwick et al.* v. *Skinner et al.* 80 Ill. 153; *Fitzgibbon* v. *Lake*, 29 id. 165; *Wing* v. *Dodge*, 80 id. 564.

It would, ordinarily, doubtless have been error to decree a sale of the property without regard to the rights of the husband, but he was before the court and consented to the decree.

The objection raised by counsel for appellant, in his reply brief, that the evidence does not sufficiently show the contents of the records in question, comes too late. Still, had it been urged in the court below and in his first brief, we are of opinion it ought not to prevail. The proof shows that the records were destroyed by fire, and hence secondary evidence became indispensable. It is not to be expected that witnesses can retain, for years, all the details of long and perhaps complicated records in their memories. To require strictness in that regard would, in effect, be to hold that the destruction of a record is equivalent to an obliteration of all evidence of the transactions to which it relates. The evidence here was, perhaps, the best attainable. It does not seem to have been seriously questioned on the hearing. No effort was made to disprove it. In the absence of evidence of some kind tending to contradict it, we think it sufficient.

The judgment is affirmed.

*Judgment affirmed.*