T. O. TANTON, Exr.

*v.*

MARY H. KELLER *et al.*

| 167 | 129 |
| 108a | 5233 |

| 167 | 129 |
| 209 | 7 99 |

*Filed at Ottawa June 8, 1897.*

1. WILLS—*legacy given for specified purpose—when adeemed.* A legacy given to satisfy a debt due to the legatee from a third person is in the nature of a specific legacy, and is adeemed or satisfied by the payment of the debt by the testator himself, in his lifetime.

2. SAME—*re-execution of will does not revive adeemed legacies.* The re-execution of a will upon adding a codicil has no other effect than a re-publication, and does not revive legacies which were adeemed or satisfied before such re-execution.

3. SAME—*when an adeemed legacy does not become intestate property.* Where a will bequeaths a specified share of the testator's personal property to certain of his grandchildren, subject to the payment of a legacy, upon the ademption of the legacy the amount freed by the ademption does not become intestate property, but passes under the will to the legatees designated.

4. EVIDENCE—*payment by testator of a sum nearly equal to legacy is presumed a satisfaction.* Where the difference between the amount of a legacy and a sum paid to the legatee by the testator in his lifetime, after making the will, is slight, the legacy is presumed to be adeemed or satisfied.

5. SAME—*spoliation—presumptions are against party destroying written instrument.* Upon proof that one has deliberately destroyed a written instrument, it will be presumed, in a controversy between him and an innocent party over the contents of such instrument, that they were against the interests of the spoliator.

6. WITNESSES—*when mother of legatees is a competent witness in suit against executor.* In a controversy between an executor and certain legatees which affects their interests only, the mother of the legatees, who is not a party to the proceeding, is a competent witness in the case.

7. APPEALS AND ERRORS—*Supreme Court may review facts in suits in the nature of chancery proceedings.* A case arising out of objections to the final account of an executor is in the nature of a chancery proceeding and one in which the Supreme Court may review questions of fact.

8. SAME—*findings of fact not against the evidence will not be disturbed.* In suits in the nature of chancery proceedings the Supreme Court will not disturb findings of fact by the lower courts not against the weight of the evidence.

*Tanton* v. *Keller,* 61 Ill. App. 625, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Woodford county; the Hon. T. M. SHAW, Judge, presiding.

John Tanton, of Woodford county, died testate on January 2, 1892, leaving him surviving his widow, Hannah Tanton, and two children, namely: a son, T. O. Tanton, called Oscar Tanton, and a daughter, Mary E. Keller, the wife of Jacob M. Keller. John Tanton's will is dated June 18, 1887. He added a codicil dated July 21, 1891, and a second codicil dated October 12, 1891. The will was admitted to probate in the county court of Woodford county on January 8, 1892, and the son, T. O. Tanton, was qualified as executor of the will, he having been named as executor therein. On February 4, 1893, the executor filed his first report.

On January 16, 1894, the executor filed his second and final report. In the latter report he claimed as credits eight items. The eighth item was as follows: "Amount paid on M. E. Keller agreement as per will, $1920.13." On February 5, 1894, the appellees herein, who are the children of Mary E. Keller and grandchildren of the testator, filed objections to certain items on the credit side of the executor's account, and especially objected to the eighth item thereof.

The fifth objection to said eighth item was as follows: "That the eighth item of credits aforesaid claimed by said executor should be wholly disallowed, for the reason that, as these respondents are credibly informed and allege to be true, the agreement mentioned in said item 8, and the vouchers filed in support thereof, was settled with and paid to T. O. Tanton and fully discharged by the said John Tanton after the making of the said will but within his lifetime, which payment and discharge of the said agreement was made by the said John Tanton for the benefit and on behalf of the said Mary E. Keller, his said

daughter and the mother of these respondents; and respondents aver that the said agreement was not, at the death of the said John Tanton, and is not now, in whole or in any part a just or existing charge or liability of or against these respondents or either of them, nor against any of the property or estate left by the said John Tanton, deceased."

The county court sustained the fifth objection to said eighth item. From this ruling the executor appealed to the circuit court of Woodford county, where the case was tried and a decree rendered by the circuit court at the April term, 1895, ordering and adjudging "that the exceptions of the complainants in this cause to the report of the accounts in question in this cause, to-wit: the report of the accounts of said T. O. Tanton, executor aforesaid, filed * * * on January 16, 1894, be and the same are hereby sustained." From this order or decree, the executor, who is the present appellant here, took an appeal to the Appellate Court. The Appellate Court rendered a judgment, affirming the order and judgment of the circuit court which sustained the exception to the eighth item of appellant's report as executor. The present appeal is from such judgment of affirmance.

The will of John Tanton with the exception of the first clause, is as follows:

· *Second clause.*—Devises to his wife, Hannah Tanton, his homestead in El Paso, Illinois; also certain personal property, and $1200.00 to be paid to her annually, in semi-annual payments, for life.

*Third clause.*—Devises to Mary E. Keller the right to use and occupy, as long as she lives, 160 acres of land, but she shall have no right to rent it to others as long as her husband, Jacob Keller, lives, but may do so after his death. Also devises about 60 acres of land to said Mary E. Keller in fee simple.

*Fourth clause.*—Devises to the heirs of the body of his daughter, Mary E. Keller, 1280 acres of land, (of which

the quarter devised to his daughter for life forms a part,) to have and to hold the same in fee simple, to be equally divided between them, but they shall take said quarter devised to their mother subject to the right of Mary E. Keller to occupy and use the same as long as she lives; and directs that all real estate devised by this clause, except the quarter devised to Mrs. Keller for life, "shall be held and controlled by my son, T. O. Tanton, as trustee, as long as my wife lives, and until the youngest child of my said daughter becomes twenty-one years old, should my wife die before that time. He shall have the charge, possession and control of said lands and rent the same, and collect the rent, issues and profits thereof, and pay the taxes thereon, and make such repairs and improvements thereon as he may think necessary and proper, and do everything he may deem most advantageous for the devisees aforesaid; and he shall, out of the proceeds and income from said lands, pay annually to my wife, as long as she lives, the sum of $600.00, to be paid as follows, viz: $300.00 to be paid on April 1, and $300.00 to be paid on October 1. of each year, my wife being hereby given a lien on said lands to be controlled by my said trustee, to secure said semi-annual payments to her, and the balance of the income of said lands said trustee shall keep at interest as much as possible. Said trustee shall be allowed as his compensation fifteen per cent annually of the gross annual income from said lands annually, and one per cent annually on the principal of all moneys loaned by him. I give to the children of Mary E. Keller, born and to be born, to be equally divided between them, one-half of my personal property which may remain for distribution when the estate is settled, less the sum of $2409.55, and compound interest thereon at the rate of eight per cent per annum from the 6th day of June, 1887, which shall be deducted therefrom and paid to my son, T. O. Tanton. Should their share of my personal estate not be equal to said sum of $2409.55 and interest, as afore-

said, then my son, T. O. Tanton, shall have a lien on the said land devised to them to secure the payment thereof, and whenever said sum and interest is paid, said T. O. Tanton shall surrender to his sister, said Mary E. Keller, her agreement to him of June 6, 1887. It is my will that said T. O. Tanton, as trustee, take and hold and manage the personal estate herein devised to my daughter's children until the youngest child is twenty-one years old, and that said personal estate be then divided equally among my daughter's children. I desire that said trustee keep this money loaned out as much as possible, and for his compensation he shall have one per cent per annum annually on all money by him loaned. Whereas, my son, said T. O. Tanton, has for years managed all my business very successfully and with great fidelity, and knows my desires, it is my request that he accept the trust herein delegated to him, and I direct that he manage said lands in his own way, without being required to ask for an order of court as to the manner in which he shall act. I also direct that he shall not be required to give any bond, either as executor of this will or as trustee. If he shall be required to give bond by order of court or by law or for any reason, then his compensation shall be double that herein specified. It is my will that the lands herein devised to the heirs of the body of Mary E. Keller be not divided between them until the youngest child is twenty-one years of age; also, that such money as may go to her children, including rents of said lands and interest, shall not be paid to them until the youngest child is twenty-one years of age, except that $100.00 may be paid to each child when it becomes eighteen years old, and annually thereafter, if there are sufficient funds in the hands of said trustee to enable him to do so, but not otherwise. Should any heir of the body of Mary E. Keller die leaving issue surviving, such issue shall take its deceased parent's share."

*Fifth clause.*—"I give and devise to my son, Thomas Oscar Tanton, commonly known as T. O. Tanton, (here follows description of 1232.49 acres of land,) to have and to hold said lands in fee simple absolute. I also give and bequeath to my son, Thomas Oscar Tanton, one-half of all my personal property which may remain for distribution after the payment of my debts and settling my estate, and I also direct that there be paid to him out of the other half of my estate the sum of $2409.55, with eight per cent compound interest from June 6, 1877, as specified in the fourth clause of this will. In case said Thomas Oscar Tanton shall die before I do, then the property herein devised to him shall pass to his heir-at-law upon the terms herein named." (By this clause 240 acres of the land named in it is subject to no restriction, but the rest of the land is subject "to a charge thereon of the payment by him to his mother of $600.00 annually as long as she lives, $300.00 to be paid on April 1 and $300.00 on October 1 of each year.")

*Sixth clause.*—"Should I die seized or possessed of any property not herein disposed of, I give, bequeath and devise it to my son, T. O. Tanton, and the heirs of the body of my daughter, Mary E. Keller, to be equally divided between them, one-half to T. O. Tanton and one-half to the heirs of the body of my said daughter."

*Seventh clause.*—Names T. O. Tanton as executor, without bond.

On June 6, 1887, the following instrument was executed by Mary E. Keller and delivered to her brother, T. O. Tanton, the appellant:

"*Know all men by these presents,* That whereas, Jacob M. Keller, of Green township, Woodford county, State of Illinois, is justly indebted to T. O. Tanton, of Cazenovia township, Woodford county, State of Illinois, to the amount of nine hundred and twenty-nine and thirty-one hundredths dollars, and interest on the same at eight per cent since October 8, 1886, amounting to forty-nine and nineteen hundredths dollars, making the amount of nine hundred and seventy-eight and fifty hundredths

dollars, for which T. O. Tanton holds the note of the said Jacob M. Keller, dated October 8, 1886; and said Jacob M. Keller is also indebted to said T. O. Tanton to the amount of fourteen hundred and twenty-two and twenty-eight hundredths dollars paid to G. W. Corwin, of Green township, Woodford county, State of Illinois, in full settlement of a bond given by said Jacob M. Keller as treasurer of highway commissioners of said Green township, (see receipt dated May 7, 1887, given by said G. W. Corwin): Now, therefore, I, Mary E. Keller, of Green township, Woodford county, State of Illinois, wife of said Jacob M. Keller, do hereby promise, covenant and bind myself, heirs, executors and assigns, to pay to the said T. O. Tanton, his heirs, executors or assigns, out of the first money, rents or profits which I receive as heir of John Tanton, of El Paso township, Woodford county, State of Illinois, the just and full sum of twenty-four hundred and nine and thirty-three hundredths dollars, (interest on money paid Corwin included in the above amount,) with interest at eight per cent, and if the interest is not paid each year, to become principal and draw interest the same as the original principal.            M. E. KELLER.    [Seal.]
June 6, 1887."

W. L. ELLWOOD, for appellant:

A specific legacy is a bequest of a particular article or specified part of the testator's estate, which is so described and distinguished from all other articles or parts of the same kind as to be capable of being identified. 13 Am. & Eng. Ency. of Law, 10.

Courts are averse to construing a legacy to be specific, and to overcome their reluctance the intention of the testator with reference to the thing bequeathed must be clear.    13 Am. & Eng. Ency. of Law, 12-15.

Unless the very thing bequeathed is in existence at the death of the testator, and then forms a part of his estate, the legacy is wholly inoperative.    3 Pomeroy's Eq. sec. 1131.

Although the testator may, at the time of executing the will, have an article or articles of the same kind as that which he purports to give, still, unless his language is sufficient to refer to, designate and identify the very

article itself as forming a part of his estate which he thereby gives, the legacy is not specific, but is general. 3 Pomeroy's Eq. sec. 1130.

Satisfaction is the donation of a thing with the intention, expressed or implied, that it is to be an extinguishment of some existing claim of the donee. 13 Am. & Eng. Ency. of Law, 70.

Satisfaction can only operate as an extinguishment of the claim with the consent of the claimant, who is necessarily put to his election. 13 Am. & Eng. Ency. of Law, 71.

An effective re-publication brings forward the whole testamentary act to its own date, and the codicil gives the same force to the will as if it had been written, executed and published at the date of the codicil. Redfield on Wills, 237, par. 5, note 8; *Duncan* v. *Duncan*, 25 Ill. 364.

A codicil affirming a will may strengthen an inference against ademption drawn from other circumstances. 13 Am. & Eng. Ency. of Law, 99, note.

When the disposition of an aliquot part of the residue itself fails from any cause, that part will not go in augmentation of the remaining parts, as a residue of a residue, but will devolve as undisposed of. Hawkins on Wills, 41, 92; 2 Jarman on Wills, 363.

The interest of the party objecting should appear of record, and the court may hear evidence to determine whether he is entitled to be heard or not. 2 Woerner, sec. 541; *Johnson* v. *Johnson*, 2 Harr. 273; *Garwood* v. *Garwood*, 29 Cal. 514.

The rule which makes the findings of fact by the Appellate Court conclusive on error or appeal to this court has no application to chancery cases, and in such cases this court may review the evidence as to the facts found. *Cheney* v. *Roodhouse*, 135 Ill. 257.

There is no distinction, in principle, between appeals from orders approving accounts of administrators or executors and appeals from orders approving accounts of guardians. *Kingsbury* v. *Powers*, 131 Ill. 182.

A. R. RICH, (BARNES & BARNES, of counsel,) for appellees:

Proceedings for the presentation and allowance of claims against estates of decedents are neither proceedings at law nor in chancery.    *Grier* v. *Cable*, 159 Ill. 29.

The widow of a testator, as to conversations of her husband with her, or with others in her presence, is an incompetent witness.    2 Starr & Curtis, chap. 51, sec. 5, clause 1; *Goelz* v. *Goelz,* 157 Ill. 33; *Enos* v. *Hunter,* 4 Gilm. 211; *Reeves* v. *Herr,* 59 Ill. 81; *Sager* v. *Eckert,* 3 Ill. App. 412; *Trepp* v. *Baker,* 78 Ill. 146; *Pyle* v. *Oustatt,* 92 id. 209; *Mueller* v. *Rebhan,* 94 id. 142.

In passing upon the weight of evidence, incompetent evidence will be rejected on appeal, whether aptly objected to by counsel or not, where the rights of minors are involved.    *Railroad Co.* v. *Kennedy,* 70 Ill. 350; *Lloyd* v. *Kirkwood,* 112 id. 329; *Johnson* v. *Johnson,* 138 id. 385.

The declarations of a testator, during his last illness, to his daughter as to the settlement by him of her obligation to appellant, are admissible in evidence.    They are not hearsay, and the daughter is a competent witness to detail them.    1 Greenleaf on Evidence, sec. 153; also, secs. 147, 189, 191, 201; *Friberg* v. *Donovan,* 23 Ill. App. 58; *Bradshaw* v. *Combs,* 102 Ill. 428; *Mueller* v. *Rebhan,* 94 id. 142; *Miller* v. *Meers,* 155 id. 284.

As to declarations against interest, see *Sandifer* v. *Hoard,* 59 Ill. 246; *Hanchett* v. *Kimbark,* 118 id. 121.

Only the judgment and order of the Appellate Court can be reviewed on appeal.    Error does not lie as to expressions and findings in its opinion.    *Bank* v. *Canniff,* 151 Ill. 329; *Railroad Co.* v. *Wangelin,* 152 id. 138; *Strodtmann* v. *County of Menard,* 158 id. 155.

In construing the several clauses of the will, so far as involved in this case, the meaning of the will and intention of the testator are to be gathered from the whole will taken together.    *Roundtree* v. *Talbot,* 89 Ill. 246; *Johnson* v. *Johnson,* 98 id. 564; *Hamlin* v. *Express Co.* 107 id. 443.

In cases of doubt, courts may resort to proof of surrounding circumstances to afford light in which to read the will. 2 Greenleaf on Evidence, secs. 287-292; *Brownfield* v. *Wilson*, 78 Ill. 467; *Richardson* v. *Eveland*, 126 id. 37.

The re-execution of the testator's will and codicils will have no other effect than a re-publication, and hence will not have the effect to revive legacies which have been adeemed or satisfied. *Ware* v. *People*, 19 Ill. App. 196; Redfield on Wills, 374.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

By the fourth clause of his will the testator, John Tanton, gave to the children of his daughter, Mary E. Keller, one-half of his personal property which might remain for distribution when the estate should be settled, "less the sum of $2409.55 and compound interest thereon at the rate of eight per cent per annum from the sixth day of June, 1887, which shall be deducted therefrom and paid to my son, T. O. Tanton." The clause then proceeds as follows: "Should their share of my personal estate not equal the said sum of $2409.55 and interest as aforesaid, then my son, T. O. Tanton, shall have a lien on the lands devised to them to secure the payment thereof, and whenever said sum and interest is paid, said T. O. Tanton shall surrender to his sister, said Mary E. Keller, her agreement to him of June 6, 1887." The fifth clause of the will gives and bequeaths to his son Thomas Oscar Tanton one-half of his personal property, which may remain for distribution after the payment of his debts and the settlement of his estate, and directs, "that there be paid to him out of the other half of my estate the sum of $2409.55 with eight per cent compound interest from June 6, 1887, as specified in the fourth clause of this will." It is claimed by the appellees, that there was here a legacy of $2409.55, etc., given by the will to the appellant, and that, after the execution of the will, there was an ademp-

tion of this legacy by the payment to appellant by the testator in his lifetime of the amount of the legacy.

*First*—The first question in this case is, whether, as matter of law, the provision in the will for the payment to appellant of $2409.55 is such a legacy or gift as can be adeemed.

The term "ademption" literally means removal or extinction. It applies originally to specific legacies. Where the testator gives or bequeaths a specific article, such as a bale of wool or a piece of cloth, and such article does not exist at the time of his death, there is an ademption of the testamentary bequest. The thing bequeathed may be lost or destroyed during the lifetime of the testator, or he may have sold the same or otherwise disposed of it, or changed its form so as to destroy its identity. Hence it has been said that a legatee will have no title to a specific legacy, unless the thing bequeathed remains *in specie*, as described in the will, at the testator's death. So also, if the testator specifically bequeath a debt which is due to him, and before his death he receives payment of the debt from the debtor, the bequest or legacy is adeemed; and this is true, whether the payment is enforced by the testator, or is made voluntarily by the debtor. (2 Williams on Executors, p. 632; 13 Am. & Eng. Ency. of Law, 73, 74; 3 Pomeroy's Eq. Jur. sec. 1131).

Demonstrative legacies are bequests of sums of money which are not in themselves specific, but are made payable out of a particular fund belonging to the testator. (3 Pomeroy's Eq. Jur. sec. 1133; 2 Williams on Executors, 632.) The text books say, that the doctrine of ademption does not apply to demonstrative legacies, inasmuch as they are payable out of general assets, if the fund out of which they are payable fails. (3 Pomeroy's Eq. Jur. 1131; 1 Am. & Eng. Ency. of Law—2d ed.—626; 2 Williams on Executors, 632.)

It is claimed by the appellant in this case, that the bequest of the $2409.55 to the appellant was not a specific

legacy, but a demonstrative legacy, upon the alleged ground, that it is payable out of a particular fund, to-wit: one-half of the personal property devised to the appellees as children of Mary E. Keller. Without entering into any discussion in reference to the distinction between the satisfaction of a legacy and its ademption, or between specific legacies and demonstrative legacies, it is sufficient to say, that the legacy here under consideration was given for a specified purpose. Where a legacy is given for a specified purpose, it is in the nature of a specific legacy; and if such purpose is accomplished by the testator in his lifetime, there is an ademption of the legacy. A legacy of $2500.00 to pay the debt on a chapel, which amounted to about $2100.00, and which the testator himself paid after the making of his will, was held to be thereby adeemed. (*Taylor* v. *Tolen*, 38 N. J. Eq. 91.) In *Taylor* v. *Tolen*, *supra*, it was said: "If a testator, who has given by will a legacy for a specified particular purpose, himself afterwards execute the purpose in his lifetime; he is presumed to have intended to cancel the legacy, which is held to be adeemed." Where a legacy is given expressly to pay a debt and the testator himself afterwards expressly pays off the debt, the legacy is adeemed or satisfied. (1 Am. & Eng. Ency. of Law—2d ed.—619; *Pankhurst* v. *Howell*, L. R. 6 Ch. App. 136; *Hine* v. *Hine*, 39 Barb. 507).

In the case at bar, it is quite manifest, that the bequest of $2409.55 to the appellant was for the purpose of paying off the obligation assumed by Mary E. Keller to the appellant by her agreement of June 6, 1887. Clause 4 expressly directs, that, when the sum of $2409.55 and interest is paid, the appellant shall surrender to his sister the agreement of June 6, 1887. When we recur to that agreement, we find that Jacob M. Keller, the husband of Mary E. Keller, was indebted to the appellant in the sum of $2409.33, and that she, Mary E. Keller, does thereby "promise, covenant and bind myself, heirs, executors and

assigns to pay to the said T. O. Tanton, his heirs, execu-
tors or assigns, out of the first money, rents or profits
which I receive as heir of John Tanton, * * * the just
and full sum of $2409.33, with interest at eight per cent,"
etc. It is true, that the testator did not owe any such debt
to the appellant, but he assumed to discharge the obli-
gation of his daughter to appellant by providing for the
payment to him of such obligation in the manner stated
in clause 4 of the will as above set forth.      Therefore,
there is presented here the case of a legacy which is given
for a specified purpose.      If it appears, that such purpose
was accomplished by the testator in his lifetime by the
discharge of the obligation of his daughter to her brother
as created by the agreement of June 6, 1887, then the
bequest or legacy of $2409.55 to the appellant has been
adeemed or satisfied.

*Second*—The next question which arises is a question
of fact, and that is, whether or not the legacy of $2409.55
was paid to T. O. Tanton by the testator in the latter's
lifetime.      Upon this subject the Appellate Court say in
their opinion: "The evidence in the case is somewhat con-
flicting, but from a fair consideration of it all, we think
the court was not in error in finding that John Tanton,
the testator, had settled with and paid in full his son
shortly before his death the sum of $2409.55, the amount
provided for in the will, and that it was done with the
intention of satisfying that portion of the will.      It was
claimed and insisted on by counsel for appellant, that,
if the payment was made by the testator as claimed, it
was upon the condition that Mary E. Keller should sign
a release accepting the provisions of the will on the day
of its probate, which they claim she did not do; hence
the bequest, they argue, was in full force.      It is not so
clear from the testimony that such conditions were or
were not attached, but we think the court below was
justified in finding there were no such conditions as con-
tended for by appellant."      We are not disposed to disturb

the finding of fact as made by the county, circuit and Appellate Courts upon this question. The witnesses were examined in open court, and the lower courts had a better opportunity than we have of testing the credibility of the witnesses. The payment of the legacy to appellant by the testator in his lifetime is shown by the proven declarations of the testator himself, and by the admissions of appellant as shown by his own testimony as it appears in this record, and as established by the testimony of other witnesses. The evidence by appellant upon the original trial before the county court, as the same is testified to by the witnesses who then heard what was said, is quite clear to the effect that he received from his father, on or about May 16, 1889, a sum very nearly equal to the amount of the legacy now in controversy in payment and discharge of the agreement executed by his sister. Where the payment made by the testator subsequently to the execution of a will is equal to or exceeds the amount of the legacy, it will be deemed a satisfaction or an ademption thereof. Where the amount so paid, or the provision made, is less than the amount of the legacy, it is deemed a satisfaction *pro tanto;* "and if the difference between the amounts be slight, it may be deemed a complete satisfaction or ademption." (2 Story's Eq. Jur. sec. 1111; 1 Am. & Eng. Ency. of Law—2d ed.—617; 13 id. 95). Here, the testimony is to the effect, that, if there was any difference between the amount of the legacy named in the will and the payment made by the testator in 1889, it was not sufficient in amount to repel the presumption of an ademption or satisfaction.

*Third*—On July 21, 1891, the testator executed the first codicil to his will, and therein recites, that such codicil is made by reason of the fact that a daughter had been born to his daughter, Mary E. Keller, since the making of his will. On October 12, 1891, he executed a second codicil to his will, in which he recites that, since the making of the will, he had sold the homestead in El Paso,

which was devised to his wife, Hannah Tanton, by the
second clause of the will; and he recites, that the object
of making the codicil is to give to his wife another piece
of property in the place of the homestead so sold.   It is
claimed by counsel for appellant that, inasmuch as these
codicils were added to the will after the payment made
by the testator in 1889, there was thereby a re-publication
of the will containing the legacy of $2409.55 to the appel-
lant, and that such re-publication of the will amounted
to a re-affirmation of such legacy, and showed that a sat-
isfaction or ademption of the legacy was not within the
intention of the testator.   The law, however, seems to
be well settled, that the re-execution of the testator's
will and codicils has no other effect than a re-publication,
and does not have the effect of reviving legacies which
have been adeemed or satisfied.   (13 Am. & Eng. Ency.
of Law, 80, 91, note 1; *Payne* v. *Parsons*, 14 Pick. 318; *Lang-
don* v. *Astor*, 16 N. Y. 57; *Ware* v. *People*, 19 Ill. App. 196;
*Richards* v. *Humphreys*, 15 Pick. 133).   The result of all the
authorities is, that the re-publication of a will does not
revive a legacy which has been adeemed or satisfied, but
only acts upon the will as it exists at the time of the re-
publication, at which time the legacy revoked, adeemed
or satisfied forms no part of the will, that is to say, no
part of it which is to be carried into execution.   "In other
words the legacy stands in the will, but it stands there
as a satisfied legacy." (*Howze* v. *Mallet*, 4 Jones' Eq. 194).

   *Fourth*—It is further contended by appellant that,
inasmuch as the testator did not take up or destroy the
agreement of Mrs. Keller, dated June 6, 1887, nor cause
it to be canceled, he did not intend the money he paid to
his son in 1889 to be in satisfaction of the legacy, or of
the agreement.   There is testimony in the record to the
effect that, when the payment in question was made by
the testator to the appellant in 1889, the agreement was
marked paid by the appellant.   The appellant denies,
that the agreement of June 6, 1887, was so canceled and

marked paid, but claims that he made a memorandum upon the agreement to the effect, that he would hand it to his sister on the day his father's will should be probated, provided she accepted the will on that day. The lower courts have found against the appellant upon the question as to whether the cancellation of the agreement was absolute or conditional. The proof, however, shows that, after the objections were filed to the eighth item in the appellant's report, he cut off from the agreement the memorandum which had been made thereon, and destroyed the same. When a person is proved to have destroyed any written instrument, "a presumption will arise, that, if the truth had appeared, it would have been against his interest, and that his conduct is attributable to his knowledge of the circumstances. The general rule is: *Omnia præsumuntur contra spoliatorem.*" (*Winchell* v. *Edwards*, 57 Ill. 41; *Downing* v. *Plate*, 90 id. 268). Where one deliberately destroys a written instrument of any kind, "and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents of such instrument in order to establish a.right founded thereon." (*Anderson* v. *Irwin*, 101 Ill. 411). The testator may well have regarded the memorandum made upon the agreement indicating its payment as a sufficient cancellation thereof.

*Fifth*—It is said, that Mrs. Keller was an interested party, and should not have been permitted to testify in this case. She is not a party to the proceeding. It is a controversy between the appellees who are the children of Mrs. Keller, and who objected to the item in the report of appellant, on the one side, and the appellant as executor and devisee, on the other side. The one-half of the personal property, donated by the will to the appellees, was insufficient to pay $2409.55, and the sum of $1920.13, mentioned in the eighth item which is objected to, represented all of the one-half of the personal prop-

erty which belonged to appellees under the will. The question is between appellees and appellant as to whether the sum of $1920.13 shall be appropriated by appellant in the payment of the legacy to him, or whether it belongs to appellees. Mrs. Keller can have no claim upon the amount thus in controversy. If the agreement of June 6, 1887, has not been paid and canceled, the appellant, who has executed a written acceptance of the provisions of the will, must look to the one-half of the personal property belonging to appellees and to a lien upon their real estate in order to reimburse himself. The appellees, and not Mrs. Keller are charged with the payment of the agreement in case it has not been paid. Under the provisions of the will, the appellant has the actual possession and control of the funds out of which he is to be paid.

It is said that, if there was an ademption of the legacy of $2409.55, then that amount, which was to be paid to appellant by the terms of clause 4 of the will, becomes intestate property, and descends one-half thereof to appellant and one-half thereof to Mary E. Keller; and that, thus, Mary E. Keller has an interest which disqualifies her from testifying. We cannot agree with this view. The will, after giving to the appellees one-half of the personal property less the sum of $2409.55 which is to be paid to appellant, uses these words: "Should *their share* of my personal estate not be equal to said sum of $2409.55 and interest as aforesaid, then my son, T. O. Tanton, shall have a lien on the land devised to them to secure the payment thereof." The words, "their share," refer to the one-half of the personal property as being the share of appellees. By the use of the words, "their share," the testator clearly indicates, that the share of the appellees was one-half of the personal property. We are of the opinion that, in case there was an ademption of the legacy in the manner above stated, the whole of the one-half so bequeathed to appellees, including the amount which was to have been paid to appellant if there had

167—10

been no ademption, belongs to the appellees and constitutes their share. Therefore the amount freed by the ademption would not be intestate estate, and Mrs. Keller would not be an interested party as being entitled to one-half of it.

*Sixth*—The point has been made, that the decision of the Appellate Court is final upon the question of fact involved in this case. In *Cheney* v. *Roodhouse*, 135 Ill. 257, where a decree and order concerning objections to the report of a guardian had been appealed from, we said (p. 262): "Even the questions of fact involved may properly be reviewed in this court. In the matter of an accounting in the county court by a guardian in respect to his administration of the trust confided to him, the powers of that court are co-extensive with those of a court of chancery, and it possesses a similar jurisdiction, and adopts the same forms and modes of procedure;" and we there held, that the rule, which makes the findings of fact by the Appellate Court conclusive on error or appeal to this court, has no application to chancery cases, in which class of cases this court reviews the evidence as to the facts found; and we also held, that the right to review the evidence should prevail in respect to a statutory proceeding of an accounting by a guardian in the probate court, since such a proceeding is in substance a chancery proceeding. In the case at bar, the case is one which arises out of objections to the final account of an executor; and there is no reason why the same right should not exist as to such an account as well as to a guardian's account. Inasmuch, therefore, as this proceeding is in the nature of a chancery proceeding, it is allowable for this court to look into the facts. Having done so, we are not satisfied that the conclusions of the lower courts are against the weight of the evidence, and therefore decline to interfere.

If, however, this proceeding be regarded as a proceeding at law, then the judgment of the Appellate Court

is conclusive upon the questions of fact; and, as the case was tried before the circuit judge without a jury, and appellant submitted to the court no propositions to be held as law in the decision of the case, there would be, under this view, no question for us to pass upon.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.