(No. 28016.—

EDITH OTTER LEWIS, Appellee, *vs.* T. C. HILL, Exr., *et al.*, Appellants.

*Opinion filed September 19, 1944.*

NICHOLS & JONES, of Tuscola, for appellants.

S. S. DuHAMEL, of Springfield, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This suit involves the disposition to be made by the executor of the last will and testament of Sarah E. Collins, deceased, of the proceeds arising from the sale of certain real estate belonging to the deceased. The dispute is between the specific devisee of the property sold and the residuary legatees of the testatrix's estate.

The will of Sarah E. Collins was executed December 12, 1935. By its terms she devised her residence in the village of Atwood, Douglas county, Illinois, to her niece, Edith Otter Lewis, plaintiff below and appellee in this court. Subsequently, on April 4, 1940, she was adjudged an incompetent, and the appellant T. C. Hill was appointed conservator of her person and estate. On October 28, 1940, the conservator presented to the county court his petition for leave to sell the real estate of his ward to provide funds for her support and maintenance. In the petition he set forth that he had in his hands as conservator $660.56 in cash; that the ward was upwards of ninety-one years of age and residing in a home for elderly persons; that the sum of $50 per month was required to maintain her in said home; that her real estate was free and clear of all liens, but was unoccupied and producing no income; and that it was for the best interest of the ward that the real estate be sold to obtain funds to maintain her in her then location or in some other home for the aged and indigent. An order of sale was entered in accordance with the prayer of the petition; and in pursuance thereof the premises devised to appellee were sold for the sum of $900. The ward died on March 16, 1941, and her will was duly admitted to probate. Appellant Hill, who was Mrs. Collins's conservator at the time of her death, was named in the will as executor, and is now acting as such. He has in his possession the $900 received from the sale of said residence property, and it is admitted that it will not be necessary to use any part of the same for the payment of the debts of the deceased or the costs of administering her estate.

The circuit court entered a decree in favor of appellee, Edith Otter Lewis, and directing the executor to pay her the said sum of $900 in due course of administration. This decree was affirmed by the Appellate Court. The case is now here for further review on a certificate of importance

issued by the judges of the Appellate Court for the Third District.

The contention of appellants is that the real estate devised to appellee having been sold during the testatrix's lifetime, pursuant to the order of a court of competent jurisdiction, there has been an ademption or extinguishment of the devise and appellee can take nothing thereunder. The term "ademption" literally means removal or extinction. Where a specific article is bequeathed and such article is lost, destroyed or disposed of by the testator during his lifetime, so that it is not in existence or does not belong to him at his death, there is an ademption of such bequest. (*Lenzen* v. *Miller*, 378 Ill. 170; *Tanton* v. *Keller*, 167 Ill. 129.) The doctrine of ademption was applied originally to specific legacies, (*Tanton* v. *Keller*, 167 Ill. 129,) but as the differences formerly prevailing between testamentary dispositions of real and personal property no longer exist, there would now seem no good reason for any distinction in this regard between a bequest of personal property and a devise of real estate.

There is no doubt that had the testatrix herself, not being incompetent, sold the property specifically devised, the subject matter of the devise would have been withdrawn from the operation of the will and the devisee would have no claim to the proceeds of such sale. The only point to be considered, therefore, is whether the same rule applies to the sale by the conservator of his ward's real estate.

The law confers upon a conservator certain powers and charges him with certain duties. The relation of trustee and *cestui que trust,* upon his appointment as conservator, is at once created between him and his ward. The estate of the latter becomes a trust fund for the support and education of himself and his family. (*Dodge* v. *Cole*, 97 Ill. 338.) The statute (Ill. Rev. Stat. 1943, chap. 3, par. 378,) authorizes the conservator, by leave of court,

to sell the real estate of the ward for the support and education of the ward and his family, for the payment of the debts of the ward, or for reinvestment, when the court deems it necessary and expedient. The county court, in acting upon the petition of a conservator for the sale of his ward's lands, exercises a jurisdiction general in its nature. The question of the necessity or advisability of selling the property is determined by the order of sale and cannot be reviewed collaterally. (*Illinois Merchants Trust Co.* v. *Turner,* 341 Ill. 101; *Hoit* v. *Snodgrass,* 315 Ill. 548; *Gardner* v. *Maroney,* 95 Ill. 552.) The governing principle in the management of property belonging to a person of unsound mind is the furtherance of his interest. Therefore, his property may be converted from realty into personalty whenever it appears to be for his interest to do· so, regardless of the contingent interests of the real and personal representatives or the interests of those who may have the eventual rights of succession. (19 Am. Jur. 19; 32 Corpus Juris, 724.) The court considers only the situation of the ward and does nothing wantonly or unnecessarily to alter the ward's property, but on the contrary takes care, for his sake, that if he recovers he shall find his estate as nearly as possible in the same condition as he left it. *Ex parte Whitebread,* 2 Meriv. 99, 35 Reprint 878; 32 Corpus Juris 724.

Conveyances by conservators are, in no sense, to be regarded as conveyances by the lunatic. They are conveyances made by the law and are analogous to conveyances by guardians and administrators. (*Gardner* v. *Maroney,* 95 Ill. 552.) While there is no authority in this State directly in point governing the disposition which should be made of the proceeds from the sale of deceased's residence property, the question presented is not without analogy to the rule which determines the character of the proceeds of sales of real property made by an administrator for the payment of debts or by an executor for purposes

specified in the will, or in cases of other judicial sales of real estate. Where land is sold by an order of court for any purpose, it is a fixed principle upon which the court always proceeds that the character of the property shall be changed only so far as may be necessary to accomplish the particular purpose. (Pomeroy's Equity Jurisprudence, vol. 3, p. 1167; Story's Equity, vol. 2, p. 1101; *Smith* v. *Smith,* 174 Ill. 52.) In partition proceedings where the real estate is sold because not susceptible of division, the proceeds of the sale are impressed with the character of the real estate and divided among the parties according to their respective interests in the land. (*Gradler* v. *Johnson,* 372 Ill. 137.) The conversion of real into personal property or personal into real property, under a power in a will, takes place only for the purposes for which it is authorized. Where these purposes fail or do not take effect in fact or in law, the property is considered as remaining in its former condition. Where an executor sells real estate of the testator for the payment of debts, the conversion of realty into personalty is completed to all intents and purposes only to the extent to which the purchase money is required for the particular objects for which the sale takes place, and the excess, though in the form of money, remains impressed with the character of real estate for the purpose of determining who is entitled to receive it. (*Smith* v. *Smith,* 174 Ill. 52.) The rule in respect to the disposition by a guardian of the proceeds of a sale of the ward's real estate is that they must be used by the guardian for the particular object contemplated by the court in granting the license to sell. If the permission to sell was granted for the purpose of maintenance and support, the moneys obtained must be so appropriated. If for the payment of debts, those debts must be paid. (*Kingsbury* v. *Powers,* 131 Ill. 182.) The same rule should be applied in respect to moneys realized by a conservator from a sale of his ward's real estate. The county court in this instance

directed the sale by the conservator for the purpose of Mrs. Collins's support. The conversion of the real estate into personalty was for that particular purpose and for her benefit alone. The fund produced by the sale cannot, therefore, be regarded as personalty for the benefit of her residuary legatees. All of the real estate of Sarah E. Collins in the possession of her conservator constituted a trust fund to be used, if necessary, for her support and the payment of her debts; and if not so used, then upon her death to go to the persons to whom she had devised the same when able to exercise a testamentary disposition. Conceding that the conservator could properly have used this money for her support or in the payment of her debts and the costs of administering her estate, still the money being on hand and not having been so used or its use so required, it must be regarded as a substitute for the land from the sale of which it was derived, and any rights which, under the will, would attach to the real estate itself will also exist in the fund. The fact that the conservator, in anticipation of the necessities of his ward, had converted the real estate into cash does not have the effect of transferring this fund, which represents the realty, to the residuary legatees. It is our conclusion that the $900, received by the conservator from the sale of the residence property, upon her death descended as such real estate and should, under the provisions of her will, be paid to the appellee to whom such property was specifically devised.

Appellants call our attention to the cases of *In re Freer*, 22 L. R. Chan. Div. 622, and *In re Ireland's Estate*, 257 N. Y. 155, 177 N. E. 405. The first is an English case, wherein bonds specifically bequeathed were, by the testator's conservator, under an order of the lord justices, transferred into consols, on the ground they were an unsafe investment. This was held to be an ademption or extinguishment of the legacy. The theory upon which the decision rests is that if the testator, while *sui juris*, had sold

the bonds there would have been an ademption or extinguishment of the legacy, and no distinction was recognized between such sale by the testator and a properly authorized sale by his conservator. In the New York case the court refused, upon the death of the testator, to award to the specific legatee of certain shares of corporate stock the unexpended portion of the proceeds of a sale thereof made by the testator's committee in lunacy for his support and maintenance, the court saying that while to do so might be equitable, it was not in accordance with the will of the testator who gave the legatee the stock and not the proceeds thereof. These cases, of course, could not be controlling under the views we have taken and heretofore expressed, which views are in harmony with the fundamental principles of equity heretofore adopted and announced by the decisions of this court. To point out the line of demarcation in the various foreign cases cited by both appellants and appellee would unduly extend the length of this opinion. Our analysis of these cases does not in any way change our views in this respect.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*